IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ISIDORO MATA, JR.,** <br><br> Petitioner, <br><br> **v.** <br><br><br> **STEWART SHERMAN, Warden,** <br><br> Respondent. | **Case No. 1:13-cv-01040 DAD MJS (HC)** <br><br> **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Respondent, warden of California State Prison, Corcoran, is substituted as the proper named respondent under Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Caely E. Fallini of the office of the California Attorney General. The parties declined magistrate judge jurisdiction under 28 U.S.C. § 636(c). (ECF No. 11.)

I.     PROCEDURAL BACKGROUND

Petitioner is in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus. On March 5, 2010, Petitioner was convicted by a jury of first degree murder, two counts of attempted murder, shooting at an occupied building, shooting at a person from a motor vehicle,

1  assault with a firearm, active participation in a criminal street gang, and numerous

2  sentencing enhancements. (Clerk's Tr. at 1047-51.) On September 3, 2010, Petitioner

3  was sentenced to an indeterminate term of 115 years to life. (Id.)

4      Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

5  District on September 30, 2011. (Lodged Doc. 1.) On September 21, 2012, the appellate

6  court affirmed the conviction. (Lodged Doc. 4.) The California Supreme Court summarily

7  denied Petitioner's petition for review on December 19, 2012. (Lodged Docs. 5-6.)

8      Petitioner next sought collateral review of the petition by way of a petition for writ

9  of habeas corpus filed with the California Supreme Court on February 21, 2013. (Lodged

10  Doc. 7.) The petition was summarily denied on April 17, 2013. (Lodged Doc. 8.)

11      Petitioner filed his federal habeas petition on June 25, 2013. (Pet., ECF No. 1.)

12  The petition raises six grounds for relief. (Id.) Petitioner asserts the following

13  constitutional violations:

14      1)  That the prosecutor engaged in misconduct by presenting a witness who

15  falsely identified Petitioner;

16      2)  That the trial court erred in allowing an accomplice's out of court

17  statements into evidence;

18      3)  That the prosecutor engaged in misconduct by presenting Andres Espara's

19  allegedly false testimony;

20      4)  That the court erred by admitting a sawed-off shotgun into evidence;

21      5)  That the law enforcement officers violated his Miranda rights in taking his

22  statement, and that the Court erred in allowing the testimony into evidence; and

23      6)  Ineffective assistance of counsel.

24      Respondent filed an answer to the petition on September 5, 2013. (Answer, ECF

25  No. 13.) Petitioner filed a traverse on October 23, 2013. (Traverse, ECF No. 19.)

26  ///

27  ///

28  ///

## II.   STATEMENT OF THE FACTS[1]

### INTRODUCTION

One evening in June 2006, Isidoro Mata (appellant) drove his car into a Modesto neighborhood and stopped in front of four different residences, while his front seat passenger, Angel Cabanillas (Angel), pointed and fired a rifle at various people, resulting in the death of one victim and injury to another. Angel's brother Pedro Cabanillas (Pedro) was riding in the backseat of appellant's car during the incident. At trial, the parties stipulated that Angel and Pedro were both documented members of the Sureño criminal street gang in Modesto known as South Side Trece (SST). A gang expert opined that appellant was also an active SST member and testified that the neighborhood where the shootings occurred was claimed by the rival Norteño gang known as Deep South Side Modesto (DSSM).

Following a jury trial, appellant was convicted of 11 offenses, including first degree murder (Pen. Code,[fn 1] § 187; count I), attempted murder (§§ 664, 187; counts II, III, & VII), shooting at an occupied building (§ 246; counts IV-VI), shooting at a person from a motor vehicle (§ 12034, subd. (c); count VIII), assault with a firearm (§ 245, subd. (a)(2); counts IX-X), and active participation in a criminal street gang (§ 186.22, subd. (a); count XI). The jury also found numerous sentence enhancement allegations to be true, including allegations the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(c)). Appellant was sentenced to prison for an aggregate term of 117 years to life.

> **FN1**: Further statutory references are to the Penal Code unless otherwise specified.

On appeal, appellant contends: (1) the trial court erred by failing to give the jury accomplice instructions with respect to Angel's out-of-court statements about the SST gang, which he made to a police officer several months prior to the commission of the offenses in this case; (2) the trial court erred by allowing the prosecution's gang expert to testify about appellant's specific intent; (3) the trial court erred by admitting a blue sawed-off shotgun into evidence and sending it into the jury room during deliberations; (4) the prosecutor committed misconduct by eliciting false testimony from one of the victims, denying his membership in the rival DSSM gang; (5) appellant's trial counsel rendered ineffective assistance by failing to object to Angel's out-of-court statements on confrontation clause grounds; and (6) the trial court erred in its imposition of a restitution fine and direct victim restitution. We affirm.

### FACTS

#### The Prosecution

On June 10, 2006, around 6:00 p.m., members of the Marquez family,

---

[1] The Fifth District Court of Appeal's summary of the facts in its September 21, 2012 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

including a number of children, were in the front yard of their house on Montavenia Drive. Alicia Marquez was wearing a red shirt and sitting on a car parked in the driveway. A teal Honda Accord drove slowly by the house. Three Hispanic males with "bald heads" were in the car. Monica Marquez assumed the car's occupants were Sureños. Someone in the car made a gang sign of the number "13" with his hand. The Honda returned and stopped in front of the house. Angel pointed a rifle at Alicia and then at the others in the front yard. He also commented on Alicia's red shirt and cursed at her in Spanish.

After leaving the house on Montavenia Drive, the Honda stopped at a house two doors down on Parducci Drive. Esteban, who was known to associate with Sureños, approached the car and spoke with the Honda's occupants. Esteban's sister, Azalia Berumen, came out of the house and started hitting the Honda and arguing with Angel. Angel pointed a rifle at Berumen and said, "South Side." Then the Honda drove away. Shortly thereafter, witnesses heard gunshots which sounded like they came from Almaden Way, the street above Montavenia Drive and Parducci Drive.

The same evening, a large birthday party for Robert Alcazar was in progress at his house on Almaden Way. The party was attended by numerous adults and children, none of whom were known to be connected with any gang. Activities were set up in front of the house, including a basketball court and bounce house. Sometime around 6:00 p.m., the Honda drove slowly by Alcazar's house. Alcazar observed that there were three "bald" Hispanic males in the Honda. Angel leaned out of the window and made a "What's up?" gesture with his hands.

The Honda drove by and stopped in front of the house several more times. During these stops, Angel pointed his rifle at Johnny Silva, who was wearing a red and white San Francisco 49ers jersey. He also fired the rifle multiple times into the open garage of Alcazar's house, where partygoers were attempting to take cover. Alcazar's close friend, Manuel Rayas, was struck and collapsed.

Rayas died from a single gunshot wound to his chest. The bullet fragment extracted during Rayas's autopsy was consistent with a .22-caliber bullet. The "clean" shape of Rayas's wound indicated the bullet did not hit any other object before hitting his body.

Lisa Averell, a witness who attended the party on Almaden Way, identified Angel from a photograph as the shooter and identified appellant in court as the driver of the Honda.

Finally, around 6:10 p.m., the Honda car stopped at a house on Spokane Street, where Andres Esparza was standing in the driveway talking on a portable telephone. Esparza's father was also sitting outside the house. One of the car's occupants said, "We're scrapas." Esparza answered, "What do I have to do with [them]?" A rifle came out of the passenger window and was aimed at Esparza. Esparza threw himself down on the ground and was shot in the leg. The Honda then took off.

The parties stipulated to the following facts: At 6:11 p.m., on June 10, 2006, the first of a series of 911 calls was made to Stanislaus County emergency dispatch regarding the shooting on Almaden Way. At 6:14 p.m., a 911 call came in reporting the shooting on Spokane Street. At 6:23

4

p.m., a Modesto Police Department patrol car reported that it was following a teal Honda. The Honda was followed until it was stopped at 6:27 p.m., by three police patrol cars. When the Honda was stopped it was being driven by appellant, Angel was the right front passenger, and Pedro was in the backseat. The Honda previously had been purchased for appellant by his father.

According to police testimony, at the time of the traffic stop, appellant, Angel, and Pedro all had shaved heads; Angel and appellant both wore white T-shirts, and Pedro wore a dark colored shirt.

Gang Evidence

Officer Pouv's Testimony

Modesto probation officer Ra Pouv, who participated in appellant's arrest on June 10, 2006, testified he knew appellant from previous contacts and had prepared field identification cards on him. On February 19, 2006, appellant told Officer Pouv that he was a member of the Sureño gang and, on April 1, 2006, told the officer he associated with the Sureño gang.

Officer Gumm's Testimony

Modesto police officer Robert Gumm testified regarding conversations he had with Angel prior to the commission of the current offenses. In late December 2005, Angel contacted Officer Gumm in juvenile hall and told the officer he wanted to talk to him. Angel wanted to give him information in exchange for having gun charges dropped. Officer Gumm made arrangements to conduct a gang debriefing of Angel. Officer Gumm explained that a gang debriefing occurs when a gang member gives law enforcement information about his gang and its activities. Officer Gumm subsequently debriefed Angel on January 4 and March 28, 2006.

During their conversations, Angel provided Officer Gumm with information about the SST gang, including "basic information of the members, current membership, the area that they claim, Sureño sets they get along with, Sureño sets they don't get along with, and then Norteño sets that they're having big issues with." The SST gang's enemies included the DSSM gang. Angel identified himself as an active SST member and said his gang moniker was "Shadow" or "Little Shadow." Angel also identified appellant as an SST member and said appellant's moniker was "Creeper" or "Little Creeper."

Angel told Officer Gumm about his involvement in a drive-by shooting. He said he and two other SST members drove by and shot at the house where the Orejel brothers lived and that the Orejel brothers were both Norteño gang members.[fn2] Angel said the .22-caliber revolver used in the drive-by shooting was the same gun officers found in December 2005, after an incident in which he was shot in the head on Bystrum Road. Angel said the .22-caliber revolver was in his waistband when the ambulance arrived to pick him up.[fn3] He was subsequently charged with possession of the gun and taken to juvenile hall, which was where he first contacted Officer Gumm.

> **FN2**: Modesto Police Officer Gary Guffey went to investigate a shooting at this location on November 26, 2005. Officer

Guffey confirmed that Serafin Orejel lived at the residence along with other family members. There were bullet holes on the residence and on a car parked in the driveway.

**FN3**: On December 25, 2005, Stanislaus County sheriff deputy Casey Hill found a .22-caliber revolver and a significant amount of blood on Bystrum Road. Deputy Jesse Reulas was dispatched to the hospital to look for someone with a gunshot wound and found Angel with a gunshot wound to the head. Angel told Deputy Reulas that he associated with Sureños and that, while walking behind a donut shop, he had been shot by four tall Norteños. Deputy Hill asked Angel about the .22-caliber revolver and Angel said it was his personal handgun.

During their conversations, Angel also gave Officer Gumm information about SST member Jose Tejeda. Angel said Tejeda kept a handgun in his car and had a sawed-off shotgun.[fn4] Officer Gumm paid Angel $100 for providing the information about the shotgun.

**FN4**: On February 14, 2006, Officer Gumm conducted a probation search of Tejeda's residence and found a sawed-off shotgun. The shotgun was painted blue, a color associated with Sureños.

In April 2006, Officer Gumm went to Angel's home to conduct a probation search. Angel told Officer Gumm that he had ammunition he wanted to turn over and gave the officer a box containing three different types of ammunition, including .22-caliber ammunition.

Officer Sharpe's Testimony

Stanislaus County probation officer Samuel Sharpe testified as the prosecution's gang expert. Officer Sharpe testified about gang culture, including gang-associated numbers, names, colors, and signs. According to his testimony, there are roughly 1,000 Sureño gang members in Stanislaus County. The Sureño gang is divided into subsets, which include the SST gang. The SST gang has between 30 and 45 members. Sureños associate with the number "13", the color blue, and variations of the word "south."

The Norteño gang in Stanislaus County is also divided into subsets, which include the DSSM gang. Norteños associate with the number "14," and the color red. They commonly wear their hair in a "Mongolian haircut, which can be ... a long braid or just long hair coming out from the top of their head."

Officer Sharpe confirmed that shooting victim Andres Esparza had a Mongolian haircut and a gang tattoo on his chest reading "DSSM." Through the gang task force, Officer Sharpe was aware that in 2006, Esparza was documented as a Norteño gang member. However, in the officer's experience, gang members do not generally come into court and admit they are gang members.

Officer Sharpe testified that the Norteño and Sureño gangs in Stanislaus

County are "mortal enemies." Drive-by shootings are common in the ongoing war between the two gangs. The four addresses where the crimes occurred in this case were all located in territory claimed by the DSSM gang.

The parties stipulated that Angel and Pedro were "in fact documented members of the Sureños, specifically the set of [SST], as of the date of this incident." The prosecutor next elicited Officer Sharpe's opinion that appellant was a member of the SST gang. In reaching this opinion, Officer Sharpe testified that he conducted the following review:"I requested and reviewed numerous police reports, police contacts, probation reports, probation contacts, regarding [appellant]. From there, I compared the activities in the reports in the various contacts with our criteria, and determined that [appellant] was in fact an active [SST] gang member."

Officer Sharpe testified that one of the criteria appellant met for gang membership was that he "[p]roclaims to be a gang member." In support of his testimony, Officer Sharpe referred to the field identification card Officer Pouv prepared regarding appellant's admission of Sureño gang membership in February 2006.

Officer Sharpe confirmed only two criteria were necessary to establish gang membership and testified that a second criterion appellant met was that he had been "[a]rrested alone or with other gang members." In support of this criterion, Officer Sharpe referred to the circumstances of the instant case, in which appellant was arrested with Angel and Pedro. Officer Sharpe further testified that if the jury found appellant committed the crime charged in the case, it would qualify as a predicate offense for purposes of defining a criminal street gang under the STEP Act (Street Terrorism Enforcement and Prevention Act).[fn5]

> **FN5**: Regarding predicate offenses, the jury was instructed pursuant to CALCRIM No. 1400, in part, as follows: "A pattern of criminal gang activity, as used here, means: [¶] 1. The commission of, conviction of, or having a juvenile petition sustained for the commission of: [¶] any combination of two or more of the following crimes: Burglary, Theft and Unlawful Taking of a Motor Vehicle, Felony Vandalism, Homicide, Manslaughter, Assault with a Deadly Weapon or By Force Likely to Cause Great Bodily Injury, Shooting at Inhabited House, Shooting from a Motor Vehicle at another Person, or Possession of Concealable Firearms; [¶] 2. At least one of those crimes was committed after September 26, 1988; [¶] 3. The most recent crime occurred within three years of one of the earlier crimes; AND [¶] 4. The crimes were committed on separate occasions, or were personally committed by two or more persons."

Another incident in which appellant was arrested with another gang member occurred on December 11, 2005, when appellant and Angel were arrested after being stopped in a stolen car. Officer Sharpe confirmed that, as a result of the incident, Angel had a juvenile petition sustained for the commission of unlawfully taking a vehicle (Veh. Code, § 10851), which also constituted a predicate offense under the STEP Act.[fn6] For his part in the incident, appellant had a

juvenile petition sustained for receiving stolen property (§ 496d).

> **FN6**: Officer Sharpe testified to a number of other predicate offenses committed by SST members, and the court received into evidence certified adjudication/conviction records of some of these offenses. For example, Pedro pled guilty to felony charge of vandalism, which occurred on September 16, 2005, and Angel was found to have committed burglary on August 1, 2005.

Officer Sharpe provided further examples of other gang criteria appellant met and concluded: "It is my opinion, based on the associations, admissions, the reliable sources, [and] untested sources, that [appellant] is in fact a member of [SST]."

Finally, the prosecution elicited an opinion from Officer Sharpe that the crimes in this case "did directly benefit the criminal street gang [SST], a subset of the Sureño gang." Officer Sharpe explained:

> "It benefited them ... at two levels. At the group level it benefited them by increasing their reputation for violence.... [¶] Individually, the benefit was an increase in your personal status amongst the gang. It showed that you had the willingness to do violence or to do whatever it took to represent your gang, [SST]."

<u>The Defense</u>

Yollanda Guevara testified that appellant was a friend of her children and that she saw him almost daily during 2003 and 2004. Nothing about appellant ever indicated that he associated with a gang.

Veronica Leon was a manager of a McDonald's restaurant. She hired appellant towards the beginning of 2006. Appellant worked 20 to 30 hours per week. She never had any issues with him. He was always polite, never complained, did his job, and obeyed every policy. Leon never saw anything that would indicate appellant was in a gang.

Modesto Police Officer Robert Hart interviewed Lisa Averell following the shooting. When given the opportunity to identify appellant, Averell said he did not look familiar. However, she was able to identify Angel immediately. Averell said she did not get a good look at the driver but focused on the passenger.

Police Officer Craig Grogan interviewed Robert Alcazar following the shooting. Alcazar said that he and Rayas were standing near each other when he heard a gunshot and the sound of the bullet impacting against either the washing machine or dryer. He then heard Rayas say, "They got me," and saw Rayas's legs collapse under him.

Alcazar told Officer Grogan that the shooter was the right front passenger. Alcazar said he saw two people in the car but had information there might have been a third. He thought one of the people in the car had dark hair, "which was possibly long."

8

1  People v. Mata, 2012 Cal. App. Unpub. LEXIS 6877, 1-15 (Cal. App. Sept. 21, 2012).

2  **III.  DISCUSSION**

3      **A.  Jurisdiction**

4         Relief by way of a petition for writ of habeas corpus extends to a person in

5  custody pursuant to the judgment of a state court if the custody is in violation of the

6  Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

7  2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

8  suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

9  conviction challenged arises out of the Stanislaus County Superior Court, which is

10  located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly,

11  the Court has jurisdiction over the action.

12      **B.  Legal Standard of Review**

13         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

14  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

15  filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood,

16  114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

17  the AEDPA; thus, it is governed by its provisions.

18         Under AEDPA, an application for a writ of habeas corpus by a person in custody

19  under a judgment of a state court may be granted only for violations of the Constitution

20  or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n.

21  7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

22  state court proceedings if the state court's adjudication of the claim:

23
24      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

25
26      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

27  28 U.S.C. § 2254(d).

28        1.  Contrary to or an Unreasonable Application of Federal Law

1    A state court decision is "contrary to" federal law if it "applies a rule that

2  contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

3  that are materially indistinguishable from" a Supreme Court case, yet reaches a different

4  result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06.

5  "AEDPA does not require state and federal courts to wait for some nearly identical

6  factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

7  even a general standard may be applied in an unreasonable manner" Panetti v.

8  Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

9  "clearly established Federal law" requirement "does not demand more than a 'principle'

10  or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state

11  decision to be an unreasonable application of clearly established federal law under §

12  2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

13  (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

14  71 (2003).  A state court decision will involve an "unreasonable application of" federal

15  law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

16  409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

17  Court further stresses that "an *unreasonable* application of federal law is different from

18  an *incorrect* application of federal law."  131 S. Ct. 770, 785 (2011), (citing Williams, 529

19  U.S. at 410) (emphasis in original).   "A state court's determination that a claim lacks

20  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

21  correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

22  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

23  have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

24  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

25  Federal law for a state court to decline to apply a specific legal rule that has not been

26  squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

27  (2009), quoted by Richter, 131 S. Ct. at 786.

28

1

### 2.   Review of State Decisions

2      "Where there has been one reasoned state judgment rejecting a federal claim,

3   later unexplained orders upholding that judgment or rejecting the claim rest on the same

4   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

5   "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

6   (9th Cir. 2006).  Determining whether a state court's decision resulted from an

7   unreasonable legal or factual conclusion, "does not require that there be an opinion from

8   the state court explaining the state court's reasoning."  Richter, 131 S. Ct. at 784-85.

9   "Where a state court's decision is unaccompanied by an explanation, the habeas

10  petitioner's burden still must be met by showing there was no reasonable basis for the

11  state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

12  not require a state court to give reasons before its decision can be deemed to have been

13  'adjudicated on the merits.'").

14      Richter instructs that whether the state court decision is reasoned and explained,

15  or merely a summary denial, the approach to evaluating unreasonableness under §

16  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

17  or theories supported or, as here, could have supported, the state court's decision; then

18  it must ask whether it is possible fairminded jurists could disagree that those arguments

19  or theories are inconsistent with the holding in a prior decision of this Court."  Id. at 786.

20  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

21  was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. at 75).  AEDPA "preserves

22  authority to issue the writ in cases where there is no possibility fairminded jurists could

23  disagree that the state court's decision conflicts with this Court's precedents."  Id.  To put

24  it yet another way:

25          As a condition for obtaining habeas corpus relief from a federal
            court, a state prisoner must show that the state court's ruling on the claim
26          being presented in federal court was so lacking in justification that there
            was an error well understood and comprehended in existing law beyond
27          any possibility for fairminded disagreement.

28  Id. at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

1    are the principal forum for asserting constitutional challenges to state convictions." Id. at

2    787. It follows from this consideration that § 2254(d) "complements the exhaustion

3    requirement and the doctrine of procedural bar to ensure that state proceedings are the

4    central process, not just a preliminary step for later federal habeas proceedings." Id.

5    (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

6                    3.       Prejudicial Impact of Constitutional Error

7           The prejudicial impact of any constitutional error is assessed by asking whether

8    the error had "a substantial and injurious effect or influence in determining the jury's

9    verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551

10   U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the

11   state court recognized the error and reviewed it for harmlessness).  Some constitutional

12   errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v.

13   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

14   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

15   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

16   Strickland prejudice standard is applied and courts do not engage in a separate analysis

17   applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

18   v. Lamarque, 555 F.3d at 834.

19   **IV.    REVIEW OF PETITION**

20          **A.       Claim One: Prosecutorial Misconduct Regarding Witness Averell**

21          Petitioner, in his first claim, asserts that his Fourteenth Amendment rights were

22   violated because the prosecution intentionally elicited false testimony from Lisa Averell

23   to the effect that she had identified Petitioner at the preliminary hearing. (ECF No. 1 at

24   5.)

25                  1.       State Court Decision

26          Petitioner first presented this claim by way of a petition for writ of habeas corpus

27   to the California Supreme Court. (Lodged Doc. 11.) The court denied the petition without

28   comment. (Lodged Doc. 12.)  Where the last state court decision did not address the

1   merits of the petition, the court, under § 2254(d), must determine what arguments or

2   theories could have supported, the state court's decision and determine whether it is

3   possible fairminded jurists could disagree that those arguments or theories are

4   inconsistent with Supreme Court law. <u>Richter</u>, 131 S. Ct. at 786.

5           2.    <u>Relevant Facts</u>

6           At the preliminary hearing, Averell testified that she observed the shootings at the

7   party on Almaden Way. (Clerk's Tr. at 156-68.) After the shootings, the police drove

8   Averell to the suspects' car and asked her to attempt to identify them. (<u>Id.</u> at 165-168.)

9   She testified that the car was the same car from the shooting.   (<u>Id.</u> at 166.) She was

10  also able to identify the shooter, who was sitting in the front passenger seat of the car.

11  (<u>Id.</u> at 167-68.) While she remembered that another person in the car was wearing a

12  white jersey with black numbering on it, she could not remember whether it was the

13  driver or a passenger in the back seat. (<u>Id.</u>)

14          At trial, Averell testified that the driver was wearing the black and white jersey and

15  identified Petitioner as the driver. (Rept'rs Tr. at 341-42.) On cross-examination, Averell

16  admitted that on the day of the shooting, she was only able to identify the shooter. (<u>Id.</u> at

17  350-51.) She further testified that she was not able to recognize the driver at the on-

18  scene identification and agreed that at the preliminary hearing she stated that she was

19  only really looking at the shooter. (<u>Id.</u> at 351-52.)

20          3.    <u>Analysis</u>

21          The knowing use of perjured testimony against a defendant to obtain a conviction

22  violates a criminal defendant's federal right to due process of law. <u>Napue v. Illinois</u>, 360

23  U.S. 264, 268-70, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959); <u>see also</u> <u>Hayes v. Brown</u>,

24  399 F.3d 972, 978 (9th Cir. 2005) ("One of the bedrock principles of our democracy,

25  implicit in any concept of ordered liberty, is that the State may not use false evidence to

26  obtain a criminal conviction." (internal citations omitted)). Petitioner bears the burden of

27  "alleg[ing] facts showing that there was knowing use of the perjured testimony by the

28  prosecution." <u>Pavao v. Cardwell</u>, 583 F.2d 1075, 1076 1077 (9th Cir. 1978). In the

1   context of the presentation of false evidence, Petitioner must prove all of the following:

2   "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should

3   have known that the testimony was actually false, and (3) that the false testimony was

4   material." United States v. Zuno Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue,

5   360 U.S. at 269 271.) Under Napue, false testimony is material, and therefore

6   prejudicial, if there is "any reasonable likelihood that the false testimony could have

7   affected the judgment of the jury." Hayes, 399 F.3d at 984 (internal citation omitted).

8       The fact that there may be inconsistencies in certain witnesses statements and

9   other conflicts in the evidence does not establish that the prosecution presented false

10  testimony. See United States v. Zuno Arce, 44 F.3d 1420, 1423 (9th Cir. 1995)

11  (inconsistencies between testimony at trial and retrial did not amount to presentation of

12  false testimony); see also United States v. Croft, 124 F.3d 1109, 1119 (9th Cir. 1997)

13  ("that a witness may have made an earlier inconsistent statement, or that other

14  witnesses have conflicting recollection of events, does not establish that the testimony

15  offered at trial was false"). Mere speculation regarding these factors is insufficient to

16  meet the petitioner's burden. United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

17      The state court denied this claim in an unreasoned opinion. Respondent contends

18  that the denial of the claim was reasonable because it was possible to construe Averell's

19  testimony at the preliminary hearing as having identified Petitioner, and that there was

20  significant additional evidence linking Petitioner to the shootings. (Answer at 23-24.)

21      The Court is not persuaded that it would be reasonable to conclude that Averell

22  identified Petitioner at the preliminary hearing.  At no time does she specifically indicate

23  that she could identify anyone but the shooter. Further, at cross examination at trial, she

24  admitted that she was not able to identify Petitioner, despite having just stated that she

25  did identify him in direct testimony. Had she truly identified Petitioner, it raises the

26  question why the prosecution would not have attempted to rehabilitate her testimony on

27  re-direct questioning. The record more accurately reflects that the witness presented

28  testimony that was false, and that the prosecution knew that the testimony was false.

However, the claim fails because the false testimony is not material. There is no "reasonable likelihood that the false testimony could have affected the judgment of the jury." See Hayes, 399 F.3d at 984. The reasons are two-fold. First, defense counsel effectively cross-examined the witness, so that it was obvious to the jury that Averell had previously provided different testimony. Second, the significant amount of additional testimony implicating Petitioner mitigated the chances of the jury relying on the false testimony to convict Petitioner.

The jury was presented with testimony from Averell that she had indeed not identified Petitioner right after the shooting, and that she focused only on the shooter and not on the driver of the car. Based on her cross-examination, the jury was provided a full account of her prior testimony, and could make a proper determination of her credibility and the weight to provide her in-court identification of Petitioner.

Further, there was significant other evidence linking Petitioner to the shootings. Robert Alcazar and Johnny Silva testified seeing a turquoise Honda with three young Hispanic males slowly drive by the party at Alcazar's house and eventually shoot at partygoers. (Rept'rs Tr. at 118-167, 194-222.) Both were able to identify the car, but neither could identify the three people in the car. (Id.) Ramiro Alvarado, a neighbor to Alcazar, also saw the Honda drive slowly by the Alcazar residence multiple times and fire shots at the party goers. (Rept'rs Tr. at 225-39.)

Monica Marquez testified that she observed the car in question drive slowly past her house and the passenger pointed a rifle at her sister, who was sitting on a car in front of the house. (Rept'rs Tr. at 415-39.) She later heard gunshots. (Id.) Her sister Alicia testified that she saw the passenger of the car point a rifle in her direction. (Rept'rs Tr. ar 435-54.) She also testified that she saw someone in the car display hand signs which she understood to represent his gang affiliation, and later she saw the passenger of the car point the rifle at a female neighbor. (Id.)

Refugio Correa testified that he heard someone from the car say "We're srapas" and saw his son shot by the passenger of the car with a rifle. (Rept'rs Tr. at 469-491.)

1   Several minutes after the shootings occurred, Petitioner and two accomplices

2   were pulled over in the identified car. Even though there was no clear identification of

3   Petitioner or the rear passenger based on the evidence presented, there was strong

4   inferential evidence that Petitioner was the driver of the vehicle at the time of the

5   shootings. The car was owned by Petitioner, and based on the timing of the events, it

6   was unlikely that Petitioner was not present in the vehicle during the shootings.

7   Based on the strong evidence supporting Petitioner's guilt, the Court finds that it is

8   not a reasonable likelihood that the false testimony affected the judgment of the jury.

9   Multiple separate witnesses observed three individuals in Petitioner's car drive around a

10  specific neighborhood and shoot at several people at separate times, and the police

11  found Petitioner driving the car less than ten minutes after 911 calls were made

12  regarding the shootings. Even though Averell implicated that she was able to identify him

13  at trial, the defense counsel undermined her testimony regarding the identification.

14  However, it would have been reasonable for the state court to conclude that the jury

15  relied upon the significant circumstantial evidence of all of the witnesses to conclude that

16  Petitioner was the driver at the time of the shootings, rather than rely on the potentially

17  false identification of Petitioner by Averell. Accordingly, Petitioner has not shown that the

18  state court's denial of this claim was a contrary or an unreasonable application of

19  Federal law under 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas

20  relief on his claim based on the prosecution's failure to correct false testimony.

21   **B.   Claim Two: Instructional Error Regarding Accomplice Liability**

22   Petitioner, in his second claim for relief asserts two related sub-claims. First, he

23  alleges that the trial court erred by failing to give accomplice instructions regarding

24  Angel's out of court statements about the SST gang. Second he alleges that his counsel

25  failed to object to the testimony based on the Confrontation Clause and that the

26  statements were testimonial under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). The

27  Court will address each claim in turn.

28

1                              1.      Accomplice Jury Instructions

2                                   a.      State Court Decision

3          Petitioner presented this claim by way of direct appeal to the California Court of

4    Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

5    appellate court and summarily denied in a subsequent petition for review by the

6    California Supreme Court. Because the California Supreme Court's opinion is summary

7    in nature, this Court "looks through" that decision and presumes it adopted the reasoning

8    of the California Court of Appeal, the last state court to have issued a reasoned opinion.

9    See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas

10   review, "look through" presumption that higher court agrees with lower court's reasoning

11   where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d

12   663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court

13   opinion in determining whether state court's rejection of petitioner's claims was contrary

14   to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

15         In denying Petitioner's claim, the California Court of Appeal explained:

16   **I.     Failure to Give Accomplice Instructions**

17   Appellant contends the trial court prejudicially erred by failing to give
18   accomplice instructions regarding Angel's out-of-court statements to
     Officer Gumm about the SST gang. Assuming without deciding the court
19   erred, we conclude there was no prejudice.

20                      A.      Applicable Legal Principles

21   Section 1111 prohibits conviction based solely on the uncorroborated
     testimony of an accomplice.[fn7] (§ 1111; People v. Davis (2005) 36
22   Cal.4th 510, 543 (Davis).) "When there is sufficient evidence that a
     witness is an accomplice, the trial court is required on its own motion to
23   instruct the jury on the principles governing the law of accomplices.
     [Citations.]" (People v. Frye (1998) 18 Cal.4th 894, 965-966 (Frye),
24   disapproved on other grounds by People v. Doolin (2009) 45 Cal.4th 390,
     421, fn. 22.)

25        **FN7**: Section 1111 states: "A conviction cannot be had upon
          the testimony of an accomplice unless it be corroborated by
26        such other evidence as shall tend to connect the defendant
          with the commission of the offense; and the corroboration is
27        not sufficient if it merely shows the commission of the
          offense or the circumstances thereof. [¶] An accomplice is
28        hereby defined as one who is liable to prosecution for the

                                              17

identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

"The rationale for instructing a jury to view with caution an accomplice's testimony that incriminates the defendant is the accomplice's self-interest in shifting blame to the defendant. [Citation.]" (People v. Cook (2006) 39 Cal.4th 566, 601.) Thus, in this context, "'"testimony" ... includes ... all out-of-court statements of accomplices and coconspirators used as substantive evidence of guilt which are made under suspect circumstances. The most obvious suspect circumstances occur when the accomplice has been arrested or is questioned by the police.' [Citation.] 'On the other hand, when the out-of-court statements are not given under suspect circumstances, those statements do not qualify as "testimony" ....' [Citation.]" (People v. Williams (1997) 16 Cal.4th 153, 245, quoting People v. Jeffery (1995) 37 Cal.App.4th 209, 218; see also People v. Brown (2003) 31 Cal.4th 518, 555 [accomplice's declaration against own penal interest was not "testimony"]; People v. Williams (1997) 16 Cal.4th 635, 682 [accomplices' statements made in course of and in furtherance of conspiracy were not "testimony"]; People v. Sully (1991) 53 Cal.3d 1195, 1230 [accomplice's excited utterance was not "testimony"].)

"Error in failing to instruct the jury on consideration of accomplice testimony at the guilt phase of a trial constitutes state-law error, and a reviewing court must evaluate whether it is reasonably probable that such error affected the verdict. [Citation.]" (People v. Williams (2010) 49 Cal.4th 405, 456.) "Any error in failing to instruct the jury that it could not convict [a] defendant on the testimony of an accomplice alone is harmless if there is evidence corroborating the accomplice's testimony. '"Corroborating evidence may be slight, may be entirely circumstantial, and need not be sufficient to establish every element of the charged offense."' [Citation.]" (Ibid.)

Corroborating independent evidence "'"need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling the truth...." [Citations.]' [Citations.]" (Davis, supra, 36 Cal.4th at p. 543, italics omitted.)

B.    Analysis

It is undisputed that Angel was an accomplice in the current offenses, but the parties disagree as to whether his out-of-court statements to Officer Gumm, which were voluntarily made during gang debriefings predating the current offenses, were made under suspect circumstances and, therefore, qualified as "testimony" within the meaning of section 1111. The parties also disagree as to whether the corroboration requirement applies generally to enhancements, and whether it would have applied here to all the charges or just the substantive gang offense. We need not decide these questions because the claimed error was harmless in any event.

In claiming he was prejudiced by the absence of accomplice instructions, appellant notes that Angel's statements to Officer Gumm connected appellant directly to the SST gang and that the prosecution relied on crimes Angel described as proof of predicate offenses under the STEP

Act. Appellant asserts:

> "Without [Angel], there would have been no predicate crime evidence, and no blue, sawed-off shotgun. [¶] Given the incredible importance of [Angel's] statements to the prosecution's case, the failure to give the accomplice corroboration instruction prejudiced [appellant]. Without the instruction, the jury had no way of knowing that it should view these voluminous statements 'with caution.'"

Appellant's prejudice argument overlooks the applicable legal principles, set forth above, that the failure to give accomplice instructions constitutes harmless error if there is evidence corroborating the accomplice's testimony, and that sufficient corroborating evidence may be slight or circumstantial, and need not corroborate every fact to which the accomplice testifies. Here, there was sufficient corroborating evidence for Angel's statements identifying appellant as a member of the SST gang. As respondent observes, Officer Pouv testified that in February 2006, appellant told him he was "a member of the Sureño gang." In his reply brief, appellant complains "[h]e neither gave Pouv any additional details nor told him which of the many Stanislaus County Sureño gangs he belonged to." However, the fact appellant, an admitted Sureño gang member, committed the crimes here in the company of two documented SST gang members, was strong circumstantial evidence that the SST gang was the particular Stanislaus County Sureño gang to which appellant belonged. Moreover, it was not the first time appellant committed a crime in the company of an SST gang member. Officer Sharpe testified that in December 2005, appellant and Angel were both arrested after being stopped in a stolen car, and both had juvenile delinquency petitions sustained against them as a result of the arrest.

In sum, appellant's admission of Sureño gang membership, combined with independent evidence of his commission of crimes in the company of SST gang members, sufficiently connected appellant to the SST gang to satisfy a reasonable jury that Angel was telling the truth when he identified appellant as a member of the same gang.[fn8] Thus, any error in failing to give accomplice instructions concerning Angel's statements identifying appellant as a SST gang member was harmless.

> **FN8**: Appellant also takes issue with photographs Officer Sharpe relied on to support his opinion that appellant associated with other SST gang members. Although there was sufficient evidence corroborating Angel's statements even without the photographs, we note that the record belies appellant's assumption that Officer Sharpe's ability to identify SST gang members in the photographs depended on information obtained from Angel's conversations with Officer Gumm. For example, Sharpe described one photograph in which appellant was wearing a blue bandana and making a Sureño gang handsign. Sharpe's cross-examination testimony indicates that his ability to identify at least one of the SST gang members in the photograph was based on his own personal knowledge. Thus, Sharpe testified: "Based on my conversation with Gabriel Pedroza, a documented SST member who went by Grumpy, who I've identified in previous pictures, Gabriel indicated the photo was taken

approximately September 25[, 2005] at a Baby Wicked concert in Bakersfield."

We reach the same conclusion regarding Angel's statements describing predicate offenses and other activities engaged in by SST gang members. The prosecution presented independent corroborating evidence for many of the crimes Angel described to Officer Gumm. Thus, the November 26, 2005, drive-by shooting at a residence on Amador Street, and Angel's subsequent admission that he possessed the .22-caliber revolver used in that shooting, after he suffered a gunshot wound to the head on December 25, 2005, was corroborated by the testimony of the officers that investigated the underlying incidents (i.e., Officer Guffey, Deputy Hill, and Deputy Reulas).[fn9] Similarly, Officer Gumm's own testimony that he conducted a probation search and uncovered a blue, sawed-off shotgun in Jose Tejeda's residence provided corroboration for Angel's statements identifying Tejeda as an SST member in possession of a sawed-off shotgun.[fn10] In light of the existence of corroborating evidence, not to mention evidence of predicate offenses wholly independent of Angel's out-of-court statements, including certified adjudication/conviction records of offenses committed by SST members Angel and Pedro, it is not reasonably probable the jury would have reached a different result had it been instructed to view with caution accomplice Angel's out-of-court statements to Officer Gumm.

FN9: See footnotes 3 and 4, ante, page 6.

FN10: See footnote 5, ante, page 8.

People v. Mata, 2012 Cal. App. Unpub. LEXIS 6877 at 15-23.

b.      Analysis

Petitioner claims his conviction cannot stand because it was supported by the uncorroborated testimony of accomplice Angel Cabanillas. In federal court "a conviction may be based on the uncorroborated testimony of an accomplice." United States v. Turner, 528 F.2d 143, 161 (9th Cir. 1975); see also Caminetti v. United States, 242 U.S. 470, 495, 37 S. Ct. 192, 61 L. Ed. 442 (1917) ("there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."); United States v. Necoechea, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face"). California Penal Code § 1111, which requires corroboration of accomplice testimony, is a "state law requirement" which is "not required by the Constitution or federal law." Laboa v. Calderon, 224 F.3d 972, 979 (9th Cir. 2000). Petitioner's claim that uncorroborated accomplice testimony was improperly used to

1   support his conviction is based solely on a perceived error of state law and is therefore

2   not cognizable in this federal habeas corpus proceeding. Pulley v. Harris, 465 U.S. 37,

3   41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984) ("A federal court may not issue the writ on the

4   basis of a perceived error of state law.").

5        Because the testimony of Petitioner's co-defendant was neither incredible nor

6   insubstantial on its face, Petitioner is only entitled to habeas corpus relief if the state

7   court's alleged violation of state law denied him his due process right to fundamental

8   fairness. Laboa, 224 F.3d at 979. The evidence introduced at Petitioner's trial, including

9   the testimony of his accomplice, was sufficient to support his convictions. See Jackson v.

10  Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (there is sufficient

11  evidence to support a conviction if, "after viewing the evidence in the light most favorable

12  to the prosecution, any rational trier of fact could have found the essential elements of

13  the crime beyond a reasonable doubt.").

14       Further, "[a] State violates a criminal defendant's due process right to

15  fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement."

16  Laboa, 224 F.3d at 979 (citing Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S. Ct. 2227,

17  65 L. Ed. 2d 175 (1980)). State criminal procedures do not violate the Due Process

18  Clause unless they "offend[] some principle of justice so rooted in the traditions and

19  conscience of our people as to be ranked as fundamental." Montana v. Egelhoff, 518

20  U.S. 37, 43, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996). The California Court of Appeal

21  carefully reviewed the evidence and determined that, under state law, sufficient evidence

22  corroborated the accomplice testimony. This determination by the Court of Appeal is

23  supported by the facts of this case and does not constitute an arbitrary denial of a state

24  law entitlement. Further, the court's ruling does not offend any fundamental principle of

25  justice or render Petitioner's trial fundamentally unfair. Petitioner is not entitled to relief

26  on his claim that there was insufficient evidence based on the lack of corroboration of

27  accomplice testimony to support his conviction.

28

1

### 2.   Confrontation Clause

2        Petitioner next claims that his trial counsel was ineffective for not objecting to the

3  testimony on Confrontation Clause grounds. In stating the claim, Petitioner implicitly

4  argues that the admission of Angel Cabanilas' out-of-court statements violated his rights

5  regarding testimonial statements under Crawford.

6        ### a.   Last Reasoned Decision

7        Petitioner presented this claim by way of direct appeal to the California Court of

8  Appeal, Fifth Appellate District. The ineffective assistance of counsel portion of the claim

9  was denied in a reasoned decision by the appellate court and summarily denied in a

10  subsequent petition for review by the California Supreme Court. Because the California

11  Supreme Court's opinion is summary in nature, this Court "looks through" that decision

12  and presumes it adopted the reasoning of the California Court of Appeal, the last state

13  court to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05 & n.3. However,

14  the Court of Appeal did not address the Crawford claim. Accordingly, that claim was

15  denied in a silent decision of the state court, and under § 2254(d), the must determine

16  what arguments or theories could have supported, the state court's decision and

17  determine whether it is possible fairminded jurists could disagree that those arguments

18  or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

19        In denying Petitioner's claim, the California Court of Appeal explained:

20        V. Ineffective Assistance of Counsel Claim

21        Appellant claims he was denied effective assistance of counsel as a result
22        of defense counsel's failure to object to Officer Gumm's testimony
          regarding Angel's out-of-court statements on the ground it violated the
          confrontation clause under Crawford v. Washington (2004) 541 U.S. 36.
23        We reject appellant's ineffective assistance of counsel claim because
          appellant cannot demonstrate prejudice.
24
25        To establish ineffective assistance of trial counsel, a defendant must
          demonstrate (1) counsel's performance fell below an objective standard of
          reasonableness under prevailing professional norms, and (2) counsel's
26        deficient representation subjected appellant to prejudice, i.e., there is a
          reasonable probability that, but for counsel's deficiencies, the result of the
27        proceedings would have been more favorable to the defendant.
          (Strickland v. Washington (1984) 466 U.S. 668, 687 (Strickland).) A
28        reasonable probability is one sufficient to undermine confidence in the

1  outcome. (Id. at p. 694.) Appellant must make this evidentiary showing by
2  a preponderance of the evidence. (Ibid.; People v. Pope (1979) 23 Cal.3d
   412, 425.)

3  We do not find it necessary to address whether defense counsel's failure
   to object to Officer Gumm's testimony on confrontation clause grounds fell
4  below the performance of a reasonably competent counsel. In order to
   establish ineffective assistance of counsel, appellant must satisfy both
5  prongs of the Strickland test. If either prong fails, the claim must be
   rejected.

6          "In particular, a court need not determine whether counsel's
           performance was deficient before examining the prejudice
7          suffered by the defendant as a result of the alleged
           deficiencies. The object of an ineffectiveness claim is not to
8          grade counsel's performance. If it is easier to dispose of an
           ineffectiveness claim on the ground of lack of sufficient
9          prejudice, which we expect will often be so, that course
           should be followed." (Strickland, supra, 466 U.S. at p. 697.)

10 There was ample evidence, independent of Officer Gumm's testimony,
   that appellant, like Angel and Pedro, was an active SST gang member
11 and that their offenses were gang-related to support the true finding of the
   gang allegations against appellant. Based on the evidence in this case, we
12 do not find a reasonable probability of a different outcome, even had
   appellant's defense attorney objected to Officer Gumm's testimony on
13 confrontation clause grounds.

14 People v. Mata, 2012 Cal. App. Unpub. LEXIS 6877 at 46-48.

15                  b.      Ineffective Assistance of Counsel

16                  i.      Applicable Law

17        The law governing ineffective assistance of counsel claims is clearly established

18 for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

19 Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

20 corpus alleging ineffective assistance of counsel, the Court must consider two factors.

21 Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

22 v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

23 performance was deficient, requiring a showing that counsel made errors so serious that

24 he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

25 Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

26 below an objective standard of reasonableness, and must identify counsel's alleged acts

27 or omissions that were not the result of reasonable professional judgment considering

28 the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

                                        23

1    (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

2    indulges a strong presumption that counsel's conduct falls within the wide range of

3    reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

4    Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

5        Second, the petitioner must demonstrate that "there is a reasonable probability

6    that, but for counsel's unprofessional errors, the result ... would have been different."

7    Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

8    as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

9    Court must evaluate whether the entire trial was fundamentally unfair or unreliable

10   because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

11   States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

12       A court need not determine whether counsel's performance was deficient before

13   examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

14   Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

15   deficiency that does not result in prejudice must necessarily fail.  However, there are

16   certain instances which are legally presumed to result in prejudice, e.g., where there has

17   been an actual or constructive denial of the assistance of counsel or where the State has

18   interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

19   659, and n. 25 (1984).

20       As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard

21   for ineffective assistance of counsel in federal habeas is extremely difficult:

22           The pivotal question is whether the state court's application of the
             Strickland standard was unreasonable. This is different from asking
23           whether defense counsel's performance fell below Strickland's standard.
             Were that the inquiry, the analysis would be no different than if, for
24           example, this Court were adjudicating a Strickland claim on direct review
             of a criminal conviction in a United States district court. Under AEDPA,
25           though, it is a necessary premise that the two questions are different. For
             purposes of § 2254(d)(1), "an unreasonable application of federal law is
26           different from an incorrect application of federal law." Williams, supra, at
             410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
27           deference and latitude that are not in operation when the case involves
             review under the Strickland standard itself.
28

                                              24

1
2
3
4
5
6

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

7 <u>Harrington v. Richter</u>, 131 S. Ct. at 785-86.

8 "It bears repeating that even a strong case for relief does not mean the state

9 court's contrary conclusion was unreasonable." <u>Id.</u> at 786. "As amended by AEDPA, §

10 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

11 already rejected in state proceedings." <u>Id.</u> "As a condition for obtaining habeas corpus

12 from a federal court, a state prisoner must show that the state court's ruling on the claim

13 being presented in federal court was so lacking in justification that there was an error

14 well understood and comprehended in existing law beyond any possibility for fairminded

15 disagreement." <u>Id.</u> at 786-87.

16 Accordingly, even if Petitioner presents a strong case of ineffective assistance of

17 counsel, this Court may only grant relief if no fairminded jurist could agree on the

18 correctness of the state court decision.

19                              ii.      Analysis

20 The state court did not determine whether counsel's conduct was deficient.

21 Instead the court focused on whether Petitioner was prejudiced by counsel's conduct.

22 The Court found that there was ample evidence independent of Officer Gumm's

23 testimony that Petitioner was an active SST gang member and that the offenses were

24 gang related to support the gang enhancement allegations. As noted in the State court's

25 rendition of the facts, which are presumed correct (28 U.S.C. § 2254(e)(1)), significant

26 testimony supporting the gang enhancements were provided by law enforcement

27 officers.

28 Officer Pouv, a Modesto police officer, testified that he performed a traffic stop on

1   Petitioner in 2006, and Petitioner admitted that he was a member of the Sureno gang.

2   Stanislaus County probation officer Samuel Sharpe testified generally about gang

3   culture and about the status of gangs in Stanislaus County. He confirmed that the

4   shootings occurred in territory claimed by the DSSM gang, a subset of Norteno gang,

5   and rival of the SST subset of the Sureno gang. Officer Sharpe testified that both Angel

6   and Pedro Cabanillas were documented members of the SST subset of the Sureno

7   gang. He also opined that Petitioner was a member of the SST gang based on Officer

8   Pouv's testimony that Petitioner identified as a gang member, and that he was arrested

9   with documented gang members in the instant case, and in another incident on

10  December 11, 2005, when Petitioner and Angel were arrested in a stolen car.

11      Petitioner has not met his burden of showing that but for counsel being ineffective,

12  there was a "reasonable probability that... the result ... would have been different."

13  Strickland, 466 U.S. at 694. As the state court explained, the prosecution presented

14  significant evidence of Petitioner's active participation in the SST gang based on

15  testimony other what Angel provided to Officer Gumm.

16      Based on the strong evidence presented of Petitioner's involvement in the gang,

17  including his own statements that he was a Sureno, it is unlikely that jurors would have

18  not found Petitioner guilty of the gang enhancement if his counsel would have objected

19  to Officer Gumm's testimony and it was not presented to the jury. Fairminded jurists

20  could therefore disagree with the correctness of the state court decision that counsel's

21  failure to object to the admission of the testimony as not "so serious as to deprive

22  defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.

23  Petitioner's claim of ineffective assistance of counsel is without merit.

24              c.      Confrontation Clause under Crawford

25                  i.      Applicable Law

26      The Sixth Amendment to the United States Constitution grants a criminal

27  defendant the right "to be confronted with the witnesses against him." U.S. Const.

28  amend. VI. "The 'main and essential purpose of confrontation is to secure for the

1  opponent the opportunity of cross-examination.'" <u>Fenenbock v. Director of Corrections</u>

2  <u>for California</u>, 692 F.3d 910 (9th Cir. 2012) (quoting <u>Delaware v. Van Arsdall</u>, 475 U.S.

3  673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). The Confrontation Clause applies

4  to the states through the Fourteenth Amendment. <u>Pointer v. Texas</u>, 380 U.S. 400, 406,

5  85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

6       In 2004, the United States Supreme Court held that the Confrontation Clause bars

7  the state from introducing into evidence out-of-court statements which are "testimonial"

8  in nature unless the witness is unavailable and the defendant had a prior opportunity to

9  cross-examine the witness, regardless of whether such statements are deemed reliable.

10 <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The

11 <u>Crawford</u> rule applies only to hearsay statements that are "testimonial" and does not bar

12 the admission of non-testimonial hearsay statements. <u>Id.</u> at 42, 51, 68. <u>See also</u>

13 <u>Whorton v. Bockting</u>, 549 U.S. 406, 420, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007) ("the

14 Confrontation Clause has no application to" an "out-of-court nontestimonial statement.").

15      Although the <u>Crawford</u> court declined to provide a comprehensive definition of the

16 term "testimonial," it stated that "[s]tatements taken by police officers in the course of

17 interrogations are . . . testimonial under even a narrow standard." <u>Crawford</u>, 541 U.S. at

18 52. The court also provided the following "formulations" of a "core class" of testimonial

19 statements: (1) "ex parte in-court testimony or its functional equivalent - that is, material

20 such as affidavits, custodial examinations, prior testimony that the defendant was unable

21 to cross-examine, or similar pretrial statements that declarants would reasonably expect

22 to be used prosecutorially;" (2) "extrajudicial statements . . . contained in formalized

23 testimonial materials, such as affidavits, depositions, prior testimony, or confessions;"

24 and (3) "statements that were made under circumstances which would lead an objective

25 witness reasonably to believe that the statement would be available for use at a later

26 trial." <u>Id.</u> at 51-52. The court in <u>Crawford</u> also pointed out that the Sixth Amendment

27 Confrontation Clause "does not bar the use of testimonial statements for purposes other

28 than establishing the truth of the matter asserted." <u>Id.</u> at 59, n.9. However, "state

1   evidence rules do not trump a defendant's constitutional right to confrontation," and a

2   reviewing court "ensures that an out-of-court statement was introduced for a 'legitimate,

3   nonhearsay purpose' before relying on the not-for-its-truth rationale to dismiss the

4   Confrontation Clause's application." (citation omitted). <u>Williams v. Illinois</u>, U.S. , 132

5   S.Ct. 2221, 2226, 183 L. Ed. 2d 89 (2012).

6       Even should a Confrontation Clause violation occur, it is subject to harmless error

7   analysis. <u>Whelchel v. Washington</u>, 232 F.3d 1197, 1205-06 (9th Cir. 2000). "In the

8   context of habeas petitions, the standard of review is whether a given error 'had

9   substantial and injurious effect or influence in determining the jury's verdict.'" <u>Christian v.</u>

10  <u>Rhode</u>, 41 F.3d 461, 468 (9th Cir. 1994) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619,

11  637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). Factors to be considered when

12  assessing the harmlessness of a Confrontation Clause violation include the importance

13  of the testimony, whether the testimony was cumulative, the presence or absence of

14  evidence corroborating or contradicting the testimony, the extent of cross-examination

15  permitted, and the overall strength of the prosecution's case. <u>Delaware v. Van Arsdall</u>,

16  475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

17              ii.      Analysis

18      Respondent concedes that Angel Cabanillas' out-of-court statements were

19  "testimonial" for purposes of <u>Crawford</u>. Officer Gumm testified regarding out-of-court

20  statements Cabanillas made to him prior to the underlying crimes in this case. During

21  those interviews, Cabanillas provided Officer Gumm information about his active

22  membership in the South Side Trece ("SST"), a Sureño gang. Cabanillas discussed a

23  driveby shooting he had been involved in. He also identified numerous SST gang

24  members, including Petitioner.

25      While this testimony was admitted, Respondent claims that admission was

26  harmless error. Respondent contends that the error did not have a substantial and

27  injurious effect or influence in determining the jury's verdict because of 'overwhelming'

28  evidence regarding the SST criminal street gang that was provided separate and

1   independent of Cabanillas' out-of-court statements.

2        As the Court described above with regard to the related claim of ineffective

3   assistance of counsel, the state court determination that the admission of the testimonial

4   statements in question was harmless based on the substantial additional evidence

5   presented regarding Petitioner's gang participation was a reasonable determination of

6   federal law. For the same reasons stated above, the Court finds that, had the state court

7   presented the argument that admission of the testimony was harmless error, it is unlikely

8   that jurors would have not found Petitioner guilty of the gang enhancement. Richter, 131

9   S. Ct. at 786.

10        Based on the other strong evidence presented of Petitioner's gang involvement,

11   including his own statements that he was a Sureno, it is unlikely that jurors would have

12   not found Petitioner guilty of the gang enhancement even if the testimonial statements of

13   Officer Gumm were found inadmissible under Crawford. Based the large amount of gang

14   evidence presented, and the overall strength of the prosecution's case, an error in

15   allowing the testimony was harmless. Delaware v. Van Arsdall, 475 U.S. at 684. The trial

16   court's error in allowing the statements did not have a substantial or injurious effect or

17   influence in determining the jury's verdict. Christian v. Rhode, 41 F.3d at 468.

18        Thus, the Court concludes that the state courts' denial of this claim was not

19   contrary to nor did it involve an unreasonable application of clearly established federal

20   law as determined by the United States Supreme Court, nor was it an unreasonable

21   determination of the facts. See 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas

22   relief on this claim.

23        **C.**   **Claim Three: Prosecutorial Misconduct Regarding Witness Esparza**

24        Petitioner, in his third claim for relief, asserts that that the prosecutor committed

25   misconduct by eliciting testimony from witness Andres Esparza that he was not a

26   member of a rival gang when the prosecution knew or should have known that he was.

27        1.   State Court Decision

28        Petitioner presented this claim by way of direct appeal to the California Court of

1  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

2  appellate court and summarily denied in a subsequent petition for review by the

3  California Supreme Court. Because the California Supreme Court's opinion is summary

4  in nature, this Court "looks through" that decision and presumes it adopted the reasoning

5  of the California Court of Appeal, the last state court to have issued a reasoned opinion.

6  See Ylst, 501 U.S. at 804-05 & n.3.

7      In denying Petitioner's claim, the California Court of Appeal explained:

8      **IV.    Prosecutorial Misconduct Claim**

9      Appellant contends the prosecutor committed prejudicial misconduct by
10     eliciting false testimony from Andres Esparza that he was not a gang
       member. Appellant asserts the prosecutor should have known Esparza
11     would lie about his gang membership because he did so several months
       earlier at Angel's criminal trial. Appellant asserts he did not forfeit the issue
12     by failing to object during trial because the prosecutor did not provide
       defense counsel with a gang injunction the prosecutor's office had recently
       obtained, naming Esparza and other members of his gang.[fn14] Thus,
13     appellant asserts, "[d]efense counsel did not know the extent of Esparza's
       gang ties" and "did not have the opportunity to object." We need not
14     resolve the forfeiture issue because, even assuming appellant's
       prosecutorial misconduct claim was properly preserved, it fails on the
15     merits. For this reason, we also reject appellant's related ineffective
       assistance of counsel claim.
16
           FN14: Because we conclude it is unnecessary to resolve the
17         forfeiture issue, we deny appellant's September 27, 2011
           request for judicial notice of documents relating to the gang
18         injunction referenced in his argument.
19
           A.    Additional Factual Background
20
       The prosecutor questioned Esparza about his gang connections as
21     follows:
22         "Q. Okay. All right. Let me ask you, Mr. Esparza, do you
           know what the name Norteño means?
23
           "A. No.
24
           "Q. You don't know.
25
           "A. No.
26
           "Q. Do you know if there is a group in the area you used to
27         live in called the Deep South Side Modesto or Deep South
           Side Norteños?
28

"A. No.

"Q. Okay. You've never heard of DSSN or DSSM?

"A. No.

"Q. Okay. Well, I want you to go back and take a look at Number 59. You have a tattoo on your chest, right?

"A. Yes.

"Q. What is the tattoo on your chest?

"A. DSSM.

"Q. DSSM?

"A. Yeah.

"Q. What does that stand for?

"A. Deep South Side Modesto.

"Q. Why do you have the initials on your chest Deep South Side Modesto?

"A. It's just where I was born, or raised, you know.

"Q. Okay. How big are these tattoos?

"A. About four inches.

"Q. The letters are four inches in height?

"A. (Nod of head) Four to five inches.

"Q. Okay. And about how wide; two, three inches, four inches?

"A. Yes.

"Q. Now, in this same picture you have a little bit of an unusual haircut. Right?

"A. Yes.

"Q. What's the name for that kind of haircut?

"A. I don't know.

"Q. You ever heard the term 'Mongolian'?

"A. No.

"Q. Would you describe to the jury your haircut there?

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"A. Just, it's just a haircut.

"Q. Well?

"A. Long hair.

"Q. The top of your head is shaved on the sides, correct?

"A. Yes.

"Q. And your hair is cut short on the top of your head?

"A. Yes.

"Q. And the back of your head it's grown out long?

"A. Yes.

"Q. Why did you get that kind of haircut? Was that something your friends were wearing?

"A. No. It was really supposed to be a mullet.

"Q. A mullet?

"A. Yes.

"Q. Okay.

"Q. And you've never heard of the Norteños?

"A. No.

"Q. How about the Sureños?

"A. No.

"Q. You've heard of criminal street gangs, right?

"A. Yeah.

"Q. People that wear red, people that wear blue?

"A. Yes.

"Q. Had you ever heard that people that belong to criminal street gangs are not supposed to say that they belong to criminal street gangs.

"A. No.

"Q. You never heard that.

"A. No.

"Q. You don't wear your hair cut like that anymore, do you?

"A. No.

"Q. You've moved? don't tell me your address, but you've moved, haven't you?

"A. Yes.

"Q. You're totally out of the neighborhood, right?

"A. Yes.

"Q. Have you looked into removing the tattoo?

"A. Yes.

"Q. So it's fair to say you don't want to associate the way you used to associate.

"A. Yes.

"Q. In fact, you work now, right?

"A. Yes."

B.      Applicable Legal Principles

"'Under well-established principles of due process, the prosecution cannot present evidence it knows is false and must correct any falsity of which it is aware in the evidence it presents, even if the false evidence was not intentionally submitted.' [Citations.] Put another way, the prosecution has the duty to correct the testimony of its own witnesses that it knows, or should know, is false or misleading. [Citations.] This obligation applies to testimony whose false or misleading character would be evident in light of information known to the police involved in the criminal prosecution [citation], and applies even if the false or misleading testimony goes only to witness credibility [citations]. Due process also bars a prosecutor's knowing presentation of false or misleading argument. [Citations.] As [the California Supreme Court has] summarized, 'a prosecutor's knowing use of false evidence or argument to obtain a criminal conviction or sentence deprives the defendant of due process.' [Citation.]" (People v. Morrison (2004) 34 Cal.4th 698, 716-717; accord, Napue v. Illinois (1959) 360 U.S. 264, 269.)

C.      Analysis

None of the forgoing principles were violated in this case. A fair review of the record makes it clear the prosecutor was attempting to elicit truthful testimony from Esparza concerning his ties to the DSSM gang, and that the prosecutor promptly sought to correct Esparza's false testimony denying knowledge of the gang by questioning him about contradictory details of his appearance. Thus, when Esparza claimed ignorance of Norteños in general and Deep South Side Modesto Norteños in particular, the prosecutor elicited testimony from Esparza that he had the gang's initials "DSSM" prominently tattooed across his chest in four-inch lettering. The prosecutor also questioned Esparza closely about his hairstyle at the

time of the offenses and later presented gang expert testimony that Esparza's hairstyle was one worn by DSSM gang members. The gang expert also testified that Esparza was a documented DSSM gang member in 2006. On this record, there is no basis to conclude the prosecutor committed misconduct by intentionally presenting false evidence or failing to correct testimony he knew to be false or misleading.

Moreover, we are aware of no authority supporting appellant's claim that a prosecutor commits "misconduct by per se" by calling a witness and attempting to elicit truthful testimony from that witness because the witness has lied in a previous trial involving a different defendant and, therefore, the prosecutor is on notice the witness will probably lie again. The case appellant cites does not support such a rule. (See People v. Seaton, supra, 26 Cal.4th at p. 650 ["A prosecutor who, before trial, seriously doubts the accuracy of an expert witness's testimony should not present that evidence to a jury, especially in a capital case"].) Here, the prosecutor attempted to elicit truthful testimony from Esparza and immediately made efforts to correct Esparza's feigned denials of knowledge of the DSSM gang. The prosecutor did not commit misconduct.

Because appellant fails to demonstrate prosecutorial misconduct in eliciting or failing to correct false testimony, it follows that defense counsel did not render ineffective assistance in failing to object to the evidence. Defense counsel is not required to make fruitless objections. (People v. Anderson (2001) 25 Cal.4th 543, 587.)

People v. Mata, 2012 Cal. App. Unpub. LEXIS 6877 at 40-46.

    2.    Analysis

The standard for prosecutorial misconduct for presenting false testimony is set forth in claim one, above. Here, it is apparent that Esparza gave false testimony when he stated that he had never heard of the Norteno street gang, or the subset of the gang known as Deep South Side Modesto Nortenos. However, after the false testimony was provided, the prosecution continued to question the witness and strongly attacked the plausibility of the statements. The prosecution elicited that the witness had a large tattoo of the letters DSSM across his chest, and at the time that he was shot wore his hair in a "Mongol" type cut – which Nortento gang members were known to do. The prosecutions' gang expert also testified that Esparza was a known Norteno gang member at the time of the shooting. Based on the testimony provided to the jury Esparza's testimony was not material as there was not a strong likelihood that the jury relied on the testimony to convict Petitioner. The prosecution proactively undermined the credibility of the statements made by Esparza regarding his gang affiliation.

1
2
3
4
5
6
7
8
9
10

In addition, there was a large amount of strong inferential evidence that the jury could have relied upon in finding Petitioner guilty. Both Esparza and his father testified that he was shot by a passenger in the teal Honda, and still more witnesses testified that the passenger in the Honda was involved in other separate shootings within a period of several minutes. Petitioner has pointed to nothing in the record to indicate that the jury substantially relied upon Esparza's testimony that he was not a rival gang member in determining Petitioner's guilt.   Accordingly, Petitioner has not shown that the state court's denial of this claim was a contrary or an unreasonable application of Federal law under 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to federal habeas relief on his claim based on the prosecution's failure to correct false testimony.

11

**D.    Claim Four: Admission of Sawed-Off Shotgun**

12
13
14
15
16
17

Petitioner, in his fourth claim for relief, asserts that his Fourteenth Amendment rights were violated by the trial court allowing the jury to handle a sawed-off shotgun during deliberations. He contends that the presence of the shotgun before the jury was overly prejudicial. He also claims that the state court did not properly engage in the requisite weighing of the probative value of the evidence relative to its prejudice prior to its admission.

18

1.    State Court Decision

19
20
21
22
23
24
25

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in a subsequent petition for review by the California Supreme Court. Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05 & n.3.

26

In denying Petitioner's claim, the California Court of Appeal explained:

27

**III.    Evidence of Sawed-off Shotgun**

28

The   trial   court   admitted   into   evidence   the   blue   sawed-off   shotgun

35

described by Officer Gumm in his testimony about his probation search of SST gang member Jose Tejeda's residence. Appellant now claims the court had no discretion to admit the shotgun into evidence because it was not relevant to any of the disputed issues at trial. Appellant also claims the record fails to show the trial weighed the prejudice against the probative value as required under Evidence Code section 352, before allowing the evidence into the jury room. We conclude appellant's claims are forfeited because he did not specifically object to the court's actions on the grounds he now asserts on appeal. We also conclude any error in admitting the sawed-off shotgun was harmless.

A.      Additional Factual Background

During Officer Gumm's testimony, this exchange occurred:

"[THE PROSECUTOR]: Q. Showing you what's been marked as Number 90, is this the sawed-off shotgun you found at Jose and Aurelio Tejeda's home?

"[OFFICER GUMM]: A. Yes, it is.

"Q. Where did you find it?

"A. It was under a mattress in the bed.

"Q. At the time that you found it, did it look like it does now? And specifically by that I mean that it was painted blue, the barrel had been sawed back about the beginning of the stock, the handle - looks like has been sawed, and then wrapped in black electrical tape with a little bit of - actually, it's duct tape and then black tape.

"A. Yes. That's how we found it. [¶] ... [¶]

"[THE PROSECUTOR]: I would offer in Number 90, subject to the stipulation that following the close of the jury's business the shotgun can be removed from evidence and replaced with a photograph. As we had previously agreed.

"[DEFENSE COUNSEL]: I object. I think the jury's seen it. I think it's prejudicial if it goes in the jury room with them.

"[THE PROSECUTOR]: It's purely up to them, or they can ask not to see it, that's up to them.

"THE COURT: All right. I'll reserve a ruling on that later. [¶] ... [¶]

"[DEFENSE COUNSEL]: It just - so it's clear, this gun has nothing to do with why we're on trial today.

"[THE PROSECUTOR]: This is a predicate.

"[DEFENSE COUNSEL]: Right.

"[THE PROSECUTOR]: I began this testimony with the

36

information that we were giving gang information.

"[DEFENSE COUNSEL]: Okay, thank you."

Later in the proceedings, this exchange occurred:

"[DEFENSE COUNSEL]: And I want to go on the record about the blue gun. We had talked about it yesterday, and over my objection you had said that the actual physical gun would go into the jury room.

"THE COURT: Well, as I recall what [the prosecutor] said, he was going to substitute a photograph.

"[THE PROSECUTOR]: What I asked for was permission to put it into evidence and withdraw it after the jury had completed its task. I absolutely want them to see it, I think they're entitled to see it. It goes to showing the reality of what occurred. That's a predicate I'm proving, I can prove the predicate in any possible way?

"THE COURT: All right. Well, as I said yesterday, my tentative decision was to allow it in, and I'm still feeling that way, but I wanted to make sure - is that sawed-off shotgun in a safe condition to go into the jury room?

"THE BAILIFF: It is.

"THE COURT: All right. I will receive it. It will be in."

B.   Analysis

Appellant's claims concerning the admissibility of the shotgun and its introduction into the jury room during deliberations have been forfeited for purposes of appeal by appellant's failure to make in the trial court the specific objections he now makes on appeal. (See e.g., People v. Bennett (2009) 45 Cal.4th 577, 606-607 [more prejudicial than probative under Evid. Code, § 352]; People v. Richardson (2008) 43 Cal.4th 959, 1002 [relevance]; People v. Gurule (2002) 28 Cal.4th 557, 626 [Evid. Code, § 352]; People v. Seaton (2001) 26 Cal.4th 598, 642-643 [foundation]; People v. Garceau (1993) 6 Cal.4th 140, 179 [relevance], disapproved on other grounds in People v. Yeoman (2003) 31 Cal.4th 93, 117-118; People v. Flores (1992) 7 Cal.App.4th 1350, 1359-1360 [relevance; not proper subject for expert testimony; witness was not qualified expert; inadmissible character evidence; failure to exercise discretion under Evid. Code, § 352; admission of evidence denied defendant due process].)

As we have seen, after initially objecting to the admission of the shotgun into evidence, defense counsel accepted the prosecutor's explanation that the shotgun was being offered as evidence of a predicate offense. Appellant now asserts "the prosecutor's understanding of the law was wrong: possession of a sawed-off shotgun is not a STEP act predicate" and "[t]herefore, the shotgun was not relevant to the charged STEP act predicate." This claim was forfeited by the failure to object on this ground below. Likewise, defense counsel did not specifically invoke Evidence Code section 352 either in objecting to the admissibility of the evidence or

37

1
2

in requesting that the evidence be excluded from the jury room during deliberations. Thus, appellant forfeited his claim that the court failed to fulfill its duty of weighing the prejudice against the probative value before sending the shotgun into the jury room.

3
4
5
6
7
8
9
10

However, even assuming appellant's claims were properly preserved for appellate review, in light of the other powerful evidence supporting the gang aspects of the case discussed above, it is not reasonably probable the jury would have reached a more favorable result if the shotgun evidence had been excluded from evidence or prohibited from going into the jury room. In finding the asserted errors harmless, we disagree with appellant's suggestion that the shotgun evidence was so inflammatory the jurors likely convicted him, not based on the other evidence properly admitted at trial, but to stop gang the gang violence symbolized by the gun. The jury was properly instructed on the limited purpose of evidence of gang activity pursuant to CALCRIM No. 1403. That instruction told the jury, among other things, that "You may not conclude from this evidence that the defendant is a person or bad character or that he has a disposition to commit crime." We presume the jury followed this instruction.

11    People v. Mata, 2012 Cal. App. Unpub. LEXIS 6877 at 34-40.

12              2.    Analysis

13                    a.    Procedural Bar

14    Respondent contends that Petitioner is procedurally barred from presenting this

15    claim based on his failure to file a contemporaneous objection and raising this claim at

16    trial. While it appears that the procedural bar could apply, in the interest of judicial

17    efficiency, the Court will review and deny the claim on the merits, rather than perform the

18    more complex analysis required to determine if the claim is procedurally barred.

19                    b.    Admission of Prejudicial Evidence

20    To the extent that Petitioner contends that prejudicial evidence, specifically

21    providing the jurors with the blue sawed-off shotgun, that was not the suspected weapon

22    used in the crimes of conviction was permitted under California state evidentiary law, his

23    claim fails because habeas corpus will not lie to correct errors in the interpretation or

24    application of state law. Estelle v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed.

25    2d 385 (1991).

26    With respect to Petitioner's due process claim, the United States Supreme Court

27    has held that habeas corpus relief should be granted where constitutional errors have

28    rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct.

1   1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however,

2   that admission of irrelevant or overly prejudicial evidence can constitute a due process

3   violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091,

4   1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the

5   admission of evidence as a violation of due process. Although the Court has been clear

6   that a writ should be issued when constitutional errors have rendered the trial

7   fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or

8   overtly prejudicial evidence constitutes a due process violation sufficient to warrant

9   issuance of the writ." (citation omitted)).

10      Even assuming that improper admission of evidence under some circumstances

11  rises to the level of a due process violation warranting habeas corpus relief under

12  AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

13  precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

14  as to violate due process only if "there are *no* permissible inferences the jury may draw

15  from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

16  in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

17  also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

18  heavy burden in showing a due process violation based on an evidentiary decision.").

19  Here, the testimony was relevant to proving elements of the various gang enhancements

20  for which Petitioner was charged.

21      Even if on balance the admission of the shotgun was overly prejudicial, its

22  admission was harmless and did not have a substantial and injurious effect or influence

23  in determining the jury's verdict. The trial court admonished the jury that the evidence

24  was only to be used for the specific purpose of determining whether Petitioner acted with

25  the intent, purpose, and knowledge required to prove the gang enhancements. (See

26  Rep'tr Tr. at 941-42. As there many credible witnesses that provided strong

27  circumstances evidence of Petitioner's guilt in the underlying offense, and additional

28  instances that would establish his participation in the SST gang, the state court's

1   decision was reasonable.  The admission of the shotgun did not deny Petitioner a fair

2   trial. After a review of the record, this Court finds that the trial court's admission of the

3   evidence would not have had a "substantial and injurious effect" on the verdict. <u>Brecht</u>,

4   507 U.S. at 623. Based on the totality of the evidence including the admonition to the

5   jury by the trial court, the fact that the shotgun was not linked to the crime in question or

6   to Petitioner, and strong evidence presented at trial regarding the shootings, there is no

7   reasonable probability the verdict would have been different if the evidence was not

8   presented. The California court's rejection of the admission of prejudicial evidence claim

9   was not contrary to nor an unreasonable application of federal law. 28 U.S.C. §

10  2254(d)(1). It is recommended that Petitioner's fourth claim for relief be denied.

11          **E.      Claim Five: Admission of Recorded Statements**

12          Petitioner, in his fifth claim, asserts that his Fifth, Sixth and Fourteenth

13  Amendment rights were violated by the admission of a taped recording of a conversation

14  between Petitioner and Angel Cabanillas after they had been arrested. (ECF No. 1 at 12-

15  13.) Petitioner contends that the attempt by law enforcement to elicit incriminating

16  statements from him violated his rights under <u>Massiah v. United States</u>, 377 U.S. 201

17  (1964). (<u>Id.</u>)

18                  1.      State Court Decision

19          Petitioner first presented this claim by way of a petition for writ of habeas corpus

20  to the California Supreme Court. (Lodged Doc. 7.) The court denied the petition without

21  comment. (Lodged Doc. 8.)  Where the last state court decision did not address the

22  merits of the petition, the court, under § 2254(d), must determine what arguments or

23  theories could have supported, the state court's decision and determine whether it is

24  possible fairminded jurists could disagree that those arguments or theories are

25  inconsistent with Supreme Court law. <u>Richter</u>, 131 S. Ct. at 786.

26                  2.      Applicable Law

27          The Supreme Court has held that the right to counsel under <u>Massiah</u> "guarantees

28  the accused, at least after the initiation of formal charges, the right to rely on counsel as

1    a 'medium' between him and the State." <u>Maine v. Moulton</u>, 474 U.S. 159, 176 (1985).

2    Although "the Sixth Amendment is not violated whenever -- by luck or happenstance --

3    the State obtains incriminating statements from the accused after the right to counsel

4    has attached," the state may not knowingly exploit an opportunity to confront an accused

5    in the absence of counsel or intentionally create a situation "likely to induce [him] to

6    make incriminating statements without the assistance of counsel." <u>Id.</u>; <u>United States v.</u>

7    <u>Henry</u>, 447 U.S. 264, 274 (1980).

8         To prove a Sixth Amendment <u>Massiah</u> violation based on the government's use of

9    an informant, a petitioner must show that the informant was acting as a government

10   agent and that he or she "deliberately elicited" incriminating statements from the

11   petitioner. <u>Massiah</u>, 377 U.S. at 206; <u>Henry</u>, 447 U.S. at 269-70. In <u>Henry</u>, the Supreme

12   Court found a Sixth Amendment violation where a paid government informant, Nichols,

13   had engaged the accused, Henry, in conversations regarding the charged bank robbery.

14   447 U.S. at 266, 270-71. The Supreme Court found that although Nichols was instructed

15   not to initiate any conversations with Henry, the government's awareness that Nichols

16   "had developed a relationship of trust and confidence with Henry" and would therefore

17   "be able to engage him in conversations without arousing Henry's suspicion" was

18   sufficient to find a violation. <u>Id.</u> at 269, 271. The Court emphasized that although Nichols

19   had not affirmatively questioned Henry, he had "stimulated" conversations in which he

20   was able to "elicit[] the statements in myriad less direct ways." <u>Id.</u> at 271 n.8, 273.

21        In <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 106 S. Ct. 2616, 91 L. Ed. 2d 364 (1986),

22   the Supreme Court addressed a question left open in <u>Henry</u>: whether a <u>Massiah</u>

23   violation may occur "where an informant is placed in close proximity but makes no effort

24   to stimulate conversations about the crime charged." <u>Henry</u>, 447 U.S. at 271 n.9. The

25   <u>Kuhlmann</u> Court answered this question in the negative, holding that an informant

26   placed in the accused's cell for the sole purpose of listening to find out the names of

27   accused co-conspirators did not "deliberately elicit" information within the meaning of

28   <u>Massiah</u>. <u>Kuhlmann</u>, 477 U.S. at 460. The Court noted that because "the primary

1   concern of the Massiah line of decisions is secret interrogation by investigatory

2   techniques that are the equivalent of direct police interrogation," a petitioner seeking to

3   make out a Massiah claim "must demonstrate that the police and their informant took

4   some action, beyond merely listening, that was designed deliberately to elicit

5   incriminating remarks." Id. at 459.

6          However, "[r]ight to counsel cases in general, and the Massiah line of cases in

7   particular, involve incidents that occurred after the initiation of adversary criminal

8   proceedings and that arose during a critical, post-indictment proceeding. United States v.

9   Hayes, 231 F.3d 663 (9th Cir. 2000). The Sixth Amendment right to counsel does not

10  attach until a prosecution is commenced. United States v. Charley, 396 F.3d 1074, 1082

11  (9th Cir. 2005) (citing McNeil v. Wis., 501 U.S. 171, 175 (1991). In other words, it

12  attaches "at or after the initiation of adversary judicial criminal proceedings -- whether by

13  way of formal charge, preliminary hearing, indictment, information, or arraignment." Id.

14  "[T]he right to counsel guaranteed by the Sixth Amendment applies at the first

15  appearance before a judicial officer at which a defendant is told of the formal accusation

16  against him and restrictions are imposed on his liberty." Rothgery v. Gillespie County,

17  554 U.S. 191, 194 (2008).

18         Here, on the night of Petitioner's arrest, but before he was formally charged,

19  Petitioner was placed in an interrogation room with Angel Cabanillas and the

20  conversation was taped without their knowledge. Because no formal charges were

21  pending against Petitioner at the time of the surreptitious taping, Massiah is not

22  implicated and Petitioner's Sixth Amendment rights were not violated. The state court's

23  denial of the claim was not contrary to or an unreasonable application of clearly

24  established federal law. Petitioner is not entitled to federal habeas relief on his claim

25  based on his Sixth Amendment right to counsel.

26         **F.     Claim Six: Ineffective Assistance of Counsel**

27         Petitioner, in his last claim, asserts that his right to effective assistance of counsel

28  was violated in a myriad of ways. (ECF No. 1 at 14-18.)

1

### 1.  State Court Decision

Petitioner presented these claims by way of a petition for writ of habeas corpus to the California Supreme Court. (Lodged Doc. 7.) The court denied the petition without comment. (Lodged Doc. 8.)  Where the last state court decision did not address the merits of the petition, the court, under § 2254(d), must determine what arguments or theories could have supported, the state court's decision and determine whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. Richter, 131 S. Ct. at 786.

### 2.  Legal Standard

The standard for ineffective assistance of counsel was set forth with regard to Petitioner's Confrontation Clause claim, above. (See Supra, Section IV(B)(2)(b).)

### 3.  Analysis

#### a.  Claim 1 – Failure to Present Self-Defense Theory

Petitioner claims counsel was ineffective because counsel did not raise a self-defense theory. (Pet. at 14.) However, as Respondent indicated, the record shows that counsel did present a self-defense theory based on allegations that party goers were throwing bottles at the car, and that Petitioner and his accomplices were in reasonable fear for their safety from being attacked. (Rept'rs Tr. at 771-72.) Accordingly, Petitioner's claim is factually inaccurate. Even if Petitioner claims that counsel did not properly explain the self-defense theory, the claim would fail. Counsel is provided great deference with regard to trial strategy. As Petitioner and his accomplices approached the party armed with a rifle, it is highly improbable that that the jury could find that Petitioner and his accomplices were fearful for their safety, rather than being the ones who initiated the violent situation. Counsel's conduct did not fall below professional standards nor has Petitioner shown that but for counsel's conduct there was a reasonable probability that the result would be different. The state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law and Petitioner is not entitled to relief.

1                              b.      Claim 2 – Presence at Jury Instruction Hearing

2              Petitioner next claims counsel was ineffective because he waived Petitioner's

3    right to be present at the jury instruction hearing. (Pet. at 14.) Petitioner argues that he

4    had a right to be present at every stage of the trial, but he has not identified any

5    prejudice flowing from his lack of presence at the hearing. He has not presented any

6    argument that, had he been present, he would have requested alteration to instructions

7    that would have had a substantial probability of changing the verdict. As Petitioner has

8    not shown any prejudice from the alleged ineffective conduct, the state court could have

9    reasonably denied the claim based on lack of prejudice alone. Petitioner has not shown

10   that but for counsel's conduct there was a reasonable probability that the result would be

11   different. The state court's denial of the claim was not contrary to or an unreasonable

12   application of clearly established federal law and Petitioner is not entitled to relief.

13                             c.      Claim 3 – Self-Defense Theory

14             Petitioner claims counsel was ineffective because counsel did not raise a self-

15   defense theory, did not properly investigate the evidence supporting the self-defense

16   theory or, alternatively, counsel was ineffective for the exact opposite – i.e., requesting

17   manslaughter and self-defense instructions and presenting such a defense. (Pet. at 14.)

18   Finally, Petitioner claims that the presentation of the self-defense theory confused the

19   jury. (Id. at 15.)

20             As Respondent indicated, the record shows that counsel did present a self-

21   defense theory based allegations that party goers were throwing bottles at the car, and

22   that Petitioner and his accomplices were in reasonable fear for their safety from being

23   attacked. (Rept'rs Tr. at 771-72.) Accordingly, Petitioner's claims of ineffectiveness for

24   failing to present a self-defense theory or requesting applicable jury instructions is

25   factually inaccurate and lacks merit.

26             Petitioner's allegation that counsel was ineffective for arguing self-defense also

27   lacks merit. The evidence presented to the jury presented a strong case of a series of

28   unprovoked gang motivated shootings. While a self-defense strategy might not have

1   been likely to succeed, Petitioner has not shown that counsel fell well below professional

2   norms to present the defense, even if ultimately unsuccessful. Even if Petitioner claims

3   that counsel was ineffective for not properly explaining the self-defense theory, the claim

4   fails. Counsel is provided great deference with regard to trial strategy. As Petitioner

5   approached the party at Alcazar's residence in a car with a firearm, it is highly

6   improbable that that the jury could find that Petitioner and his accomplices were fearful

7   for their safety, rather than the ones who instigated the violent situation. Further, the

8   defense does not address the fact that Petitioner was involved in the Esparza shooting

9   shortly thereafter, in which there was no evidence that he or his accomplices feared for

10   their safety.

11       Nor has Petitioner shown that counsel was ineffective for failing to investigate the

12   defense.  "Counsel must, at a minimum, conduct a reasonable investigation enabling him

13   to make informed decisions about how best to represent his client, and a lawyer has a

14   duty to investigate what information potential eye-witnesses possess, even if he later

15   decides not to put them on the stand. Silva v. Woodford, 279 F.3d 825, 846 (9th Cir.

16   2002) (citations and quotations omitted.)  In this case, defense counsel presented

17   testimony that an argument occurred at the Alcazar residence with Petitioner and his

18   accomplices, that there was glass on the roadway after the incident, and comments that

19   bottles were thrown at the passengers in the car. (Rep'tr. Tr. at 852-54, 861-62.) While

20   there might have been more evidence to support the self defense theory, based on the

21   testimony presented, the self defense theory was plausible based on the information as

22   investigated. Petitioner's claim that counsel failed to investigate the theory or present

23   evidence in support of the record are not accurate.

24       There is also no merit to the claim that counsel's presentation of the self-defense

25   theory was ineffective assistance of counsel because it confused the jury to Petitioner's

26   detriment. Even if the theory may have created some confusion when presented with

27   other alternative defenses, such a decision is one of strategy, for which counsel is given

28   great deference. Just as where counsel is not ineffective for failing to present an

alternative theory, the presentation of alternative theories, by itself does not implicate that counsel was ineffective. Turk v. White, 116 F.3d 1264, 1266-1267 (9th Cir. 1997) (concluding that once counsel reasonably selects a defense, failing to present an alternative and inconsistent defense is not ineffective assistance of counsel).

Counsel's conduct did not fall below professional standards nor has Petitioner shown that but for counsel's conduct there was a reasonable probability that the result would be different. The state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law and Petitioner is not entitled to relief.

> d.    Claim 4 – Failure to Investigate Innocence, Supress Evidence, Exclude False Testimony, and Lack of Knowledge in the Law

Petitioner next summarily claims that counsel did not perform an independent investigation to determine potential innocence, that counsel did not supress irrelevant evidence, that counsel did not exclude false testimony, and that counsel was not knowledgeable in the law. (Pet. at 15.) Petitioner does not provide any factual support for these claims, and based on that reason alone, the claims fail. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations unsupported by a statement of specific facts do not warrant habeas relief); see also Blackledge v. Allison, 431 U.S. 63, 75 n.7, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) ("the petition is expected to state facts that point to a real possibility of constitutional error" (citation and internal quotation marks omitted)); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has presented no argument as to how he is innocent, what evidence could have been rightfully supressed or excluded, and how his attorney was not knowledgeable. It is not the duty of this Court to review the entire record of the proceedings to attempt to find support for these claims. As described previously, there was significant circumstantial evidence supporting a finding of Petitioner's guilt. Petitioner is not entitled to relief, and the state court's denial of the claims was not contrary to or an unreasonable application of clearly established federal law.

e.      Claim 5 – Evidentiary Burden Instruction

Petitioner states that the Court instructed the jury that Petitioner plead not guilty and unless the evidence proves that he was guilty beyond a reasonable doubt, he must be found not guilty. (Pet. at 15.) Petitioner does not assert that counsel took any action that was ineffective. Moreover, the instruction to the jury regarding the burden of proof appears correct. The Court sees no basis for ineffective assistance of counsel for this claim.  Petitioner is not entitled to relief, and the state court's denial of the claims was not contrary to or an unreasonable application of clearly established federal law.

f.      Claim 6 – Asking Jury to Find Petitioner Guilty of Lesser Included Offenses

Petitioner claims that counsel was ineffective for asking the jury to find Petitioner guilty of the lesser included offenses of manslaughter and negligent discharge of a firearm. The decision to present a defense to mitigate the charges against Petitioner does not show that counsel is ineffective. Even though Petitioner was found guilty of murder, he has not shown that counsel's strategy was one that fell below professional norms. This Court has previously mentioned how there was significant evidence implicating Petitioner's guilt as to the crimes. Rather than attempt to refute Petitioner's involvement, counsel's decision to minimize Petitioner's conduct appears reasonable, and possibly a more credible defense to present to the jury. The state court could have reasonably denied the claim based on either the fact that counsel's actions did not fall below professional standards or due to lack of prejudice to Petitioner. The state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law and Petitioner is not entitled to relief.

g.      Claim 7 – Counsel Previously Attempted to Invoke a Self-Defense Claim Without Client Consent

Petitioner claims that in 2007 counsel attempted to invoke a theory of self-defense in another case without the knowledge of his client, and the client assaulted him in open court for doing so. That defendant was provided a new attorney, and the resulting trial ended in a hung jury, and eventual plea bargain. (Pet. at 16.) It is assumed that Plaintiff

1   contends that this past uncorroborated episode shows that counsel was ineffective.

2   Again, Petitioner's claim is conclusory. Jones, 66 F.3d at 204-05. There is also no basis

3   for, even assuming the story is true, that one could reasonably extrapolate that counsel

4   was ineffective for presenting a self-defense theory in this case. Each case is unique,

5   and Petitioner has failed to show that counsel's conduct fell below professional norms, or

6   that he was prejudiced by the conduct.

7       The state court could have reasonably denied the claim based on either the fact

8   that counsel's conduct did not fall below professional norms or that he was prejudiced by

9   counsel's conduct. The state court's denial of the claim was not contrary to or an

10  unreasonable application of clearly established federal law and Petitioner is not entitled

11  to relief.

12              h.      Claim 8 – Counsel Did Not Object to Recording

13      Petitioner next claims counsel was ineffective because he did not object to the

14  admission of the audio recording of Petitioner and Cabanillas discussed above in claim

15  5. (Pet. at 16.) As explained in claim 5, the presentation of the recording did not violate

16  Petitioner's Sixth amendment rights under Messiah. Petitioner has not shown that

17  counsel was ineffective for failing to challenge the presentation of the recording of the

18  conversation. Petitioner has not raised any legitimate legal challenge that counsel could

19  have raised to prevent the recording from being admitted. As explained in claim five, the

20  recording did not violate Petitioner's right to counsel as he had yet to be formally

21  arraigned. Further, to extent that Petitioner claims that the conversation violated his

22  rights under Miranda v. Arizona, 384 U.S. 436 (1966), he has not shown that the

23  statements were made during custodial interrogation. Miranda, 384 U.S. at 444 ("The

24  prosecution may not use statements, whether exculpatory or inculpatory, stemming from

25  custodial interrogation of the defendant unless it demonstrates the use of procedural

26  safeguards effective to secure the privilege against self-incrimination.") Petitioner was

27  not being interrogated, and while he was confined in an interrogation room with an

28  accomplice, Petitioner would not have a reasonable expectation of privacy that would

1  limit the government from recording his statements.

2       The state court could have reasonably denied the claim based on the fact that
3  counsel's conduct did not fall below professional standards as there was not a legitimate
4  basis to object to the audio recording. The state court's denial of the claim was not
5  contrary to or an unreasonable application of clearly established federal law and
6  Petitioner is not entitled to relief.

7                    i.       Claim 9 – Failure to Object Prosecution's Closing Argument
8       Petitioner claims counsel was ineffective for failing to object to the prosecution's
9  misconduct in closing argument. However, Petitioner has presented insufficient evidence
10  to support the claim. It appears that the claim was based on degrading comments from
11  the prosecution mocking, not Petitioner, but defense counsel. The claim is conclusory.
12  Jones, 66 F.3d at 204-05. Further, even if such comments were made, and they were in
13  violation of Petitioner's Due Process rights, he has not shown that he was prejudiced by
14  the comments. It is reasonably assumed that the jury would decide the case based on
15  the facts presented, and would not have reached a different result in light of comments
16  regarding Petitioner's counsel.

17       The state court could have reasonably denied the claim based on the fact that
18  Petitioner was not prejudiced by the conduct. The state court's denial of the claim was
19  not contrary to or an unreasonable application of clearly established federal law and
20  Petitioner is not entitled to relief.

21                    j.       Claim 10 – Failure to Object to Sleeping Juror
22       Petitioner next claims counsel was ineffective because he did not object until after
23  Petitioner was convicted that a juror allegedly fell asleep twice during jury instructions.
24  (Pet. at 16.) Respondent notes that only defense counsel saw the alleged incident, and
25  even if it occurred it may have been appropriate strategy to not alienate the jury by
26  notifying the court and the rest of the jury that the juror was sleeping. Furthermore,
27  Respondent contends that due to the overwhelming evidence of Petitioner's guilt, the
28  state court could have reasonably found that Plaintiff did not suffer prejudice and there

1    was not a reasonable probability of a different result. The Court agrees. Based on the

2    argument presented, there was no indication that the juror slept through any portion of

3    the testimony or was not otherwise paying attention.

4         The state court could have reasonably denied the claim based on the fact that

5    counsel's conduct did not fall below professional standards for failing to object to the

6    sleeping jury, or that he was prejudiced by the event. The state court's denial of the

7    claim was not contrary to or an unreasonable application of clearly established federal

8    law and Petitioner is not entitled to relief.

9                      k.        Claim 11 – Failure to Object to Admission of Shotgun

10        Petitioner claims counsel was ineffective for failing to object to the admission of

11   the shotgun under California Evidence Code Section 352. (Pet. at 16.) However, the

12   record reflects that defense counsel did object to the admission of the shotgun as being

13   prejudicial. (Rep'tr Tr. at 550, 771.) While counsel did not state the evidentiary code

14   section by name, his verbal objection to the shotgun as being overly prejudicial placed

15   the court on notice of the nature of the objection. As counsel did object to the admission

16   of the testimony, and the claim is factually inaccurate, the state court's denial of the

17   claim was not contrary to or an unreasonable application of clearly established federal

18   law and Petitioner is not entitled to relief.

19                      l.        Claim 12 – Counsel Failed to Object to Averell's Testimony

20        Petitioner claims counsel was ineffective for failing to object, exclude, and

21   impeach Lisa Averell's testimony regarding her identification of Petitioner. (Pet. at 16.)

22   However, the record reflects that defense counsel did significantly impeach Averell on

23   cross-examination, to reflect that she did not actually previously identify Petitioner. (See

24   Supra Section IV(A).) Even if counsel did not object or move to exclude the testimony,

25   under Strickland, counsel is given deference with regard to matters of strategy.

26   Impeaching the witness' testimony is a viable strategy to address the presentation of

27   false testimony. Again, the claim is factually inaccurate, and the state court's denial of

28   the claim was not contrary to or an unreasonable application of clearly established

50

1   federal law and Petitioner is not entitled to relief.

2               m.      Claim 13 – Counsel Failed to Supress Cabanillas' Testimony

3         Petitioner claims counsel was ineffective for failing to supress accomplice Angel

4   Cabanillas' out of court statements to Officer Gumm. (Pet. at 16.) This claim was

5   previously addressed and denied above (See Supra Claim 2, Section IV(B)(2).)

6   Accordingly, Petitioner is not entitled to relief.

7               n.      Claim 14 – Counsel Failed to Request Cautionary

8                      Instructions

9         Petitioner claims that counsel was ineffective for failing to request cautionary

10  instructions regarding accomplice testimony and corroborating evidence as related to

11  Angel Cabanillas' out-of-court statements. In claim two, the Court concluded that

12  Petitioner was not entitled to relief on his claim that the court should have provided

13  cautionary jury instructions. In denying the claim, the Court determined that Petitioner did

14  not show that he was prejudiced by the out of court statements. Likewise, Petitioner's

15  claim for ineffective assistance of counsel must fail based on the failure to show

16  prejudice.

17        As explained above, based on the strong evidence presented of Petitioner's

18  involvement in gang, including his own statements that he was a Sureno, it is unlikely

19  that jurors would have not found Petitioner guilty of the gang enhancement if his counsel

20  would have requested the court provide cautionary instructions with regard to Officer

21  Gumm's testimony regarding Cabanilla's out of court statements. Fairminded jurists

22  could therefore disagree with the correctness of the state court decision that counsel's

23  failure to request cautionary instructions as not "so serious as to deprive defendant of a

24  fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Petitioner's claim of

25  ineffective assistance of counsel is without merit.

26              o.      Claim 15 – Failure to Interview or Call Angel Cabanillas

27        Petitioner claims that counsel was ineffective for failing to interview or call

28  accomplice Angel Cabanillas as a witness. Petitioner provides no argument as to what

1   beneficial testimony Cabanillas could provide, or whether he would even testify.

2          The state court could have denied this claim for failure to show that there was a

3   reasonable probability that, but for counsel's unprofessional errors, the result would have

4   been different. Strickland, 466 U.S. at 694. Cabanillas, like Petitioner, was charged for

5   the same crimes, and therefore it would have been unlikely, and clearly against the

6   advice of his own counsel, to take the stand in Petitioner's case, where he could be

7   forced under oath to make incriminating statements. Even if he did testify, there is no

8   evidence in the record that would remotely implicate that he could provide any

9   exonerating testimony that would be credible. Additionally, if Cabanillas was willing to

10   admit that he was the primary instigator of the shootings, it would not have been a

11   unreasonable application of the law or facts for the state court to conclude that based on

12   the evidence presented, Petitioner would still likely have been convicted based on

13   accomplice liability. (Rep'tr Tr. at 908-10.)

14          Petitioner has not shown that counsel's failure to call Cabanillas caused prejudice.

15   See United States v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no claim for

16   ineffective assistance of counsel for a failure to call a witness where no evidence witness

17   would testify); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (ineffective

18   assistance of counsel for a failure to call witnesses fails when there is no indication what

19   witnesses would have testified to or how their testimony may have changed outcome of

20   hearing). Petitioner's claim of ineffective assistance of counsel is without merit.

21               p.     Claim 16 – Failure to Object to Admission of Serafin Shooting

22          Petitioner claims that counsel was ineffective for failing object to testimony from

23   the prosecution's gang expert of a drive-by shooting of Serafin's house used to establish

24   that SST was a criminal street gang. The challenged evidence involved testimony from

25   Officer Guffey of a drive-by shooting by SST gang members of a house of two Norteño

26   gang members. (Rep'tr Tr. at 526-29.) Officer Sharpe, the prosecution's gang expert,

27   relied in part upon this drive-by shooting as a predicate offense for his opinion that SST

28   is a criminal street gang. (Id. at 692-93.)

1    The prosecution had to prove that a primary activity of SST was to commit certain

2    enumerated offenses in order to satisfy the elements of the criminal enhancement that

3    Petitioner participated in a criminal street gang. Cal. Penal Code § 186.22(a). Shooting

4    at an inhabited house is one of the enumerated offenses. Cal. Penal Code §

5    186.22(e)(5). The evidence regarding the drive-by shooting by SST members was

6    relevant and objection by Petitioner's trial counsel would have been denied. Counsel

7    cannot be ineffective for failing to make a meritless objection. See Rupe v. Wood, 93

8    F.3d 1434, 1445 (9th Cir. 1996) (failure to take a futile action can never be deficient

9    performance). In addition, the state court could have reasonably determined that

10   Petitioner failed to demonstrate prejudice under Strickland based on the overwhelming

11   evidence supporting the gang-related charge and enhancements that was independent

12   of the challenged evidence and the limiting instruction regarding gang-related evidence

13   provided by the trial court.

14   Petitioner has not shown that counsel was ineffective and the state court's denial

15   of the claim was not contrary to or an unreasonable application of clearly established

16   federal law. Petitioner is not entitled to relief with regard to this claim.

17                    q.      Claim 17 – Failure to Object to Gang Roster

18   Petitioner claims that counsel was ineffective for failing to object to exclude a

19   roster of SST gang members. (Pet. at 17.) The challenged evidence was a roster of

20   names and gang monikers of SST gang members recovered during a search of a

21   Sureño gang member's jail cell at the Stanislaus County Jail. (Rep'tr Tr. ar 647-49.)

22   Petitioner was included on the roster. (Id.)

23   Like in the claim above, the prosecution had to prove certain elements of the

24   criminal enhancement that Petitioner participated in a criminal street gang. Cal. Penal

25   Code § 186.22(a). In order to prove Petitioner actively participated in a criminal street

26   gang (§ 186.22(a)), the prosecution had to show that Petitioner actively participated in

27   SST and that SST was a group constituting three or more persons. (Clerk's Tr. at 905-

28   07.) The roster was relevant evidence establishing both of those necessary elements. A

1   relevance objection by Petitioner's trial counsel would have been futile, and Petitioner's

2   counsel was not ineffective for failing to make a meritless objection. See Rupe, 93 F.3d

3   at 1445. ) In addition, the state court could have reasonably determined that Petitioner

4   failed to demonstrate prejudice under Strickland based on the overwhelming evidence

5   supporting the gang-related charge and enhancements that was independent of the

6   challenged evidence and the limiting instruction regarding gang-related evidence

7   provided by the trial court.

8        Petitioner has not shown that counsel was ineffective and the state court's denial

9   of the claim was not contrary to or an unreasonable application of clearly established

10  federal law. Petitioner is not entitled to relief with regard to this claim.

11              r.      Claim 18 – Failure to Investigate or Object to an F.I. Card

12       Petitioner claims that counsel was ineffective for failing to exclude the introduction

13  of a Field Identification ("F.I. card") by Officer Pouv.[1] (Pet. at 17.) Petitioner argues that

14  the evidence was irrelevant and prejudicial. (Id.) The evidence indicates that a known

15  SST gang member was stopped and upon searching his residence, ammunition and

16  firearms were found. (Rep'tr Tr. at 518-21.)

17       This evidence was again used to prove certain elements of the criminal

18  enhancement that Petitioner participated in a criminal street gang. Cal. Penal Code §

19  186.22(a). While the evidence might have been corroborated by the information

20  contained on the F.I. card, Officer Pouv testified based on his personal knowledge of the

21  events surrounding the stop and search of the gang member. The evidence was both

22  relevant and admissible. An objection by Petitioner's trial counsel would have been futile,

23  and Petitioner's counsel was not ineffective for failing to make a meritless objection. See

24  Rupe, 93 F.3d at 1445. ) In addition, the state court could have reasonably determined

25  that Petitioner failed to demonstrate prejudice under Strickland based on the

26

27       [1] Respondent claims that this claim is not exhausted. However, the Court may review and deny a
    claim, notwithstanding the failure of Petitioner to exhaust the claim. See 28 U.S.C. § 2254(b)(2).
28  Accordingly, in the interest of judicial efficiency, the Court will proceed to the merits of the claim.

54

overwhelming evidence supporting the gang-related charge and enhancements that was independent of the challenged evidence and the limiting instruction regarding gang-related evidence provided by the trial court.

Petitioner has not shown that counsel was ineffective and the state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

s.     Claim 19 – Failure to Investigate or Object to Evidence Presented of a Fight at School

Petitioner claims that counsel was ineffective for failing to exclude the introduction of evidence that Petitioner was involved in a gang motivated fight in which several Sureno gang members assaulted a victim with Norteno gang affiliations. (Pet. at 17, Rep'tr Tr. at 713.)

This evidence was again used to prove certain elements of the criminal enhancement that Petitioner participated in a criminal street gang. Cal. Penal Code § 186.22(a). The evidence was relevant to showing Petitioner's active participation in an criminal street gang. An objection by Petitioner's trial counsel would have been futile, and Petitioner's counsel was not ineffective for failing to make a meritless objection. See Rupe, 93 F.3d at 1445.) In addition, the state court could have reasonably determined that Petitioner failed to demonstrate prejudice under Strickland based on the overwhelming evidence supporting the gang-related charge and enhancements that was independent of the challenged evidence and the limiting instruction regarding gang-related evidence provided by the trial court.

Petitioner has not shown that counsel was ineffective and the state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

t.     Claim 20 – Introduction of Evidence of Tagging

Petitioner claims that counsel was ineffective for failing to exclude evidence that a wall was tagged near Petitioner's apartment. (Pet. at 17.) The evidence consisted of

55

1   testimony that, in the alley behind Petitioner's apartment, there were known Sureno

2   gang signs made with spray paint. (Rep'tr Tr. at 576-80.) Counsel did not object to the

3   gang expert's presentation of this evidence, but instead cross-examined the expert

4   regarding the gang signs. The expert admitted that he did not know who painted the

5   signs or when they were painted. (Id. at 725-26.)

6          This evidence was again used to prove certain elements of the criminal

7   enhancement that Petitioner participated in a criminal street gang. Cal. Penal Code §

8   186.22(a). The evidence was relevant to showing the existence of a criminal street gang.

9   An objection by Petitioner's trial counsel would have been futile, and Petitioner's counsel

10  was not ineffective for failing to make a meritless objection. See Rupe, 93 F.3d at 1445.)

11  In addition, the state court could have reasonably determined that Petitioner failed to

12  demonstrate prejudice under Strickland based on the overwhelming evidence supporting

13  the gang-related charge and enhancements that was independent of the challenged

14  evidence and the limiting instruction regarding gang-related evidence provided by the

15  trial court.

16         Petitioner has not shown that counsel was ineffective and the state court's denial

17  of the claim was not contrary to or an unreasonable application of clearly established

18  federal law. Petitioner is not entitled to relief with regard to this claim.

19                    u.       Claim 21 – Investigation of Alcohol Bottles in the Car

20         Petitioner, in his last claim of ineffective assistance of counsel, asserts that

21  counsel was ineffective for failing to investigate who purchased the bottles of alcohol

22  found in the car used in the shooting as Petitioner and his accomplices were all

23  underage. (Pet. at 18.) Petitioner's claim is vague, and it is unclear how the alcohol was

24  relevant to defending Petitioner's case. The person who purchased or was in possession

25  of the alcohol was no more or less likely to be implicated in the crime based on evidence

26  of who purchased the alcohol.

27         The state court could have reasonably determined that Petitioner failed to

28  demonstrate prejudice under Strickland with regard to this claim. Petitioner has not

shown that counsel was ineffective and the state court's denial of the claim was not contrary to or an unreasonable application of clearly established federal law. Petitioner is not entitled to relief with regard to this claim.

## V.    RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, under 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The Finding and Recommendation will then be submitted to the District Court for review of the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    April 22, 2016                        /s/ Michael J. Seng
                                                UNITED STATES MAGISTRATE JUDGE